THOMPSON & Co. v. BARNUM & Co.

1. **Principal and Agent:** SALES ON COMMISSION. By the terms of an order for merchandise the party from whom the merchandise was ordered was to retain the property therein upon certain conditions annexed to the order, the party making the order to be merely his agent for selling, at an agreed commission therefor. A third party subsequently took the goods from the agent in satisfaction of a debt of his own: *Held*, that the owner was entitled to recover therefor from the party so taking them.

*Appeal from Butler Circuit Court.*

THURSDAY, OCTOBER 24.

THIS is an action of replevin for six plows of the alleged value of twenty-three dollars each. The cause was tried by the court, and a finding of facts was submitted by the court, as follows:

I. Plaintiffs are a copartnership engaged in the manufacture and sale of agricultural implements at Beloit, Wisconsin.

II. On the 2d day of March, 1877, Johnson & Searles, of Greene, Butler county, Iowa, executed the following instrument to plaintiffs:

"*Messrs. J. Thompson & Co., Beloit, Wisconsin:*

"1. We, the subscribers, of Greene, county of Butler, State of Iowa, hereby order of you the following plows, etc., to be delivered on board the cars in Beloit, marked Johnson & Searles, Greene, Iowa, at prices annexed and terms of warranty, for which we agree to pay you in good farmers' notes, indorsed by us, and the payment of which we guarantee in full within six months after they are due; or if at any time before or after the expiration of the six months, or before they are due, you or your agent should consider any notes received from us poor, we agree to exchange other good notes for them, if you so desire, due at the same time as the original ones.

"2. Reports and remittances to be made on the first of every month, and as much oftener as you may request, for sales of previous months, and final report and full settlement to be sent in not later than July 1st, next.

"3. All notes to bear interest at ten per cent per annum from April 1st, or from date of sale if the plow is sold after that date, and to be due not later than January 1st, next, 1878.

"4. All notes to be taken upon your blanks, and made payable to your order, and to have clause providing for attorney's fees in case collection is commenced by law.

"5. We hereby waive notice, protest and demand on all notes that may be sent you, and notice of non-payment for same, and it shall not be necessary for you to take any steps to collect the same in order to hold us, unless we request you in writing to do so.

"6. Goods to be warranted only against breakage caused by manifest defect in material. All claims for shortage to be made within five days from receipt of goods, or no allowance asked for.

"7. All moneys and notes sent by express to be prepaid. Remittances by draft to be with exchange. No goods to be returned except by your order, and when so returned we agree to write our name and address, as well as yours, plainly on the tag. Hardened shovels and shares not warranted against breakage.

"8. Will look to carriers for loss or damages to goods where same are shipped and receipted for in good order.

"9. Will pay freight, storage and other expenses on all goods ordered.

"10. Will collect all notes returned to us for collection free of charge, and remit the proceeds promptly, less exchange.

"11. Will keep all plows, etc., insured to the full amount of their net value, according to this list, with losses, if any,

payable to you.   If we do not insure it is at our own risk, and if destroyed by fire we agree to pay for them.

"12.   Will pay all taxes on goods in our possession.

"13.   It is understood that all goods ordered are handled for you on commission; that they are your goods, and that we must account to you for all goods disposed of at the prices of the list annexed, less the discount agreed upon, and must get our profits or commissions, pay freight and other expenses out of what the articles sell for over and above such price-list.

"14.   On July 1st, next, we will settle for everything ordered, whether sold or not, in good farmers' notes, guaranteed by us, except stirring plows.

"15.   All stirring plows remaining unsold on the 1st day of July next you will carry until December 1st, next, unless sooner sold, at the end of which time we will pay for them in good farmers' notes, guaranteed by us, whether sold or not.

"16.   In case the agency is not continued with us next season, you have the right at your option to take back all plows that remain unsold on July 1st, next, without repaying us any freight or other expenses incurred.

"17.   You have the right to revoke this contract at any time when we depart from its provisions or you may deem yourselves insecure in continuing the agency with us, and in either case you have the right to take back unsold goods without repaying us any freight or other expenses incurred.

"18.   No understanding or agreement not expressly stipulated in this order will be recognized on either side, unless plainly stated in writing.

"19.   All orders sent in by us, between the present time and July 1st, next, to be on the foregoing terms.

"20.   This order shall be valid even though not shipped when ordered, unless countermanded in writing.   Thirty per cent off as above.   Ship at once via. . . . . . . . . . .

"JOHNSTON & SEARLES."

III.  About the 5th day of March, 1877, plaintiffs shipped on the cars at Beloit, Wisconsin, to defendants Johnston & Searles the plows in controversy, in compliance with the foregoing instrument.  Plaintiff's letter book shows copy of shipping bill as follows:

March 5, '7.

JOHNSTON & SEARLES,
          *Greene, Iowa:*

| | | | |
|---|---|---|---|
| 6 No. 8 I. B. Plows, @ $23, | - | $138.00 | |
| "B" list, 30 per cent off, | - | 41.40 | |
| | | | 96.60 |

IV.  A short time afterward, and before the plows arrived at Greene, Johnston & Searles dissolved their partnership; Wesley Searles, of the firm succeeding the firm, taking all the firm assets and assuming all the firm liabilities.

V.  At this time Johnston & Searles were indebted to defendants on account, and on a promissory note past due, and one of the defendants called on Searles and demanded payment of the amount due the defendants.  Searles informed the defendants he could not pay the money, but offered to let defendants have a wagon and agricultural implements in payment at or near their cost, and defendants agreed to take the wagon, but it was left at the shops to have some springs fixed and other repairs made.

VI.  About this time Searles employed one Sipple as clerk and salesman, and shortly afterward left Butler county, leaving Sipple in charge of his business.

VII.  At this time the plows arrived at depot in Greene, and Sipple, at the direction of Searles, had them taken to the warehouse of Searles at Greene.

VIII.  After Searles had left Butler county, and while the plows were in the warehouse of Searles, one of the defendants called on Sipple, and informed him of the arrangement he had made with Searles about taking the wagon and implements in payment of defendants' debt, and that he wanted to get them. Sipple informed defendant that he had not seen the bill for

these plows, and did not know their cost. The two then went to the office of Searles, and in looking over the bill book they found a bill for the plows in substance as follows:

JOHNSTON & SEARLES, *Greene, Iowa,*
Bought of JOHN THOMPSON & Co.,
Beloit Plow and Wagon Works.

1877.

| | | |
|---|---|---|
| March 5, 6 No. 8 I. B. Plows, @ $23, | - | $138.00 |
| "B" list, 30 per cent. off, | - - | 41.40 |
| | | ———$96.60 |

Sipple then sold to defendants the wagon and plows in question, in payment of defendants' debt against Johnston & Searles, and defendants took possession of the wagon and the plows, and had no knowledge of the order or contract between plaintiffs and Johnston & Searles.

IX. Afterward plaintiffs demanded the plows from defendants, and, failing to get them, commenced this action to recover the possession of the plows, and a bill, similar to the one set out in the eighth finding, was sent to plaintiffs' attorney, a short time before the commencement of this suit. The officer who served the writ delivered five of the plows to plaintiffs, but could not find the other one.

The court found conclusions of law as follows: That the title to the plows did not pass from plaintiffs to Johnston & Searles under the terms of the order or contract between them; that the sale to the defendants of the plows on a pre-existing debt against Johnston & Searles was void as against the plaintiffs, and, hence, that plaintiffs are entitled to the possession of the plows, as the owners thereof, and, failing to obtain one of the plows on the writ, are entitled to judgment against defendants for its value, which is found to be fifteen dollars and seventy-five cents, and that the facts in the case do not estop plaintiffs to assert their claim to the property.

In accordance with this conclusion judgment was rendered against the defendants, and they appeal.

Thompson & Co. v. Barnum & Co.

*Hemenway, Polk & Thorp,* for appellants.

*J. W. Gilger* and *A. Converse,* for appellee.

DAY, J.—The court did not err in holding that, under the terms of the order pursuant to which the property in question was shipped, the title did not pass from the plaintiffs to Johnston & Searles, and that they had no authority to dispose of it in payment of a pre-existing debt which they owed the defendants. Under the terms of shipment Johnston & Searles were merely the agents of plaintiffs, with authority to dispose of the implements in the manner indicated in the order. To hold that they became either absolute or conditional purchasers of the plows, it would be necessary to ignore utterly many of the provisions of the order pursuant to which the shipment was made. The plaintiffs are not estopped from insisting upon their rights in the property because of the execution of the bill for the plows, set out in the court's finding of facts. The defendants were not induced to make their purchase because of the existence of this bill. From the finding of facts it appears that they had agreed to take this property in payment of the debt due them, before they had any knowledge of the existence of this bill. The bill was referred to simply for the purpose of ascertaining the price of the plows. For cases analogous in their principles to this, see *Conable v. Lynch,* 45 Iowa, 84; *Bayliss v. Davis,* 47 Iowa, 340.

AFFIRMED.

1. PRINCIPAL and agent: sale on commission.