HARRIET G. F. MILTON v. ALBERT N. JOHNSON and Others.

February 13, 1900.

Nos. 11,923—(207).

### Collection by Subagent—Application to Payment of Debt of Principal Agent.

A subagent intrusted with the collection of a debt due from a third party may not apply the proceeds of the same to the payment of a claim due himself from the principal agent from whom it came, knowing that it belongs to such party, or in any way divert the funds so collected from a quick and speedy transmission to the owner thereof.

### Same—Liability of Subagent to Principal.

Where the principal agent has forwarded collections to a subagent, and directs the latter to make any use of the funds other than the usual one of their application to the payment of the debt to the principal, and such subagent complies with such direction, he becomes responsible therefor to the principal.

Action in the district court for Hennepin county by plaintiff, as executrix of the will of George R. Milton, deceased, against defendants, copartners under the firm name of Swift County Bank, to recover $1,035 collected by defendants, with interest. The case was tried before Elliott, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*S. H. Hudson* and *Daniel Fish*, for appellants.

*Kitchel, Cohen & Shaw*, for respondent.

LOVELY, J.

The defendants were engaged in the banking business at Benson, in this state, under the partnership name of the Swift County Bank, and, as such firm, had considerable to do with A. F. & L. E. Kelley, loan agents of Minneapolis. The Kelleys became insolvent and made an assignment in September, 1896, previous to which time the bank at Benson had acted as their subagent; receiving applications for loans, which the Kelleys took up with funds which belonged to themselves, or to the third parties for whom they acted. The bank also collected from time to time both principal and interest due upon loans for the Kelleys, and remitted the proceeds to them. Several years before the assignment, George R. Milton made a loan of $1,000 to one Alsaker, who lived near Benson. This loan was secured by mortgage. Milton, the mortgagee, died, and plaintiff was duly appointed executrix of his will. In April, 1896, afterwards, at the request of the defendant bank, the Kelleys procured the note and mortgage, which had still a year to run, and forwarded the same, with a satisfaction, to the bank for collection. The Kelleys had full authority from plaintiff to collect this debt, and to invest the proceeds in another loan. The defendant bank collected the note and one interest coupon, amounting to $1,035, and also collected interest due on previous coupons amounting to $192.14, which sum had previously, when due, been sent to the plaintiff by the Kelleys, as if it had been actually collected. Of this last proceeding, defendant bank knew nothing.

At the time the money was collected on the Milton note and mortgage, the Kelleys were indebted to the defendant bank in the

sum of $5,000 on a demand note which they had given in the previous December, and upon which payment was demanded in the following January, when the Kelleys directed the defendant to pay it out òf "collections" coming to them as loan agents through the bank. In May, 1896, the defendant, as subagent of the Kelleys, collected eleven other notes, running to third parties, which had been placed with the bank for collection, and had in its hands after receiving the money on the Alsaker note the round sum of $2,532. Of this money so collected it remitted $32 to the Kelleys, and credited $2,500 on the note of $5,000 running from the Kelleys to the bank. The Kelleys accepted the remittance in full payment of the collections to that extent, including the Alsaker note and interest due on the last coupon. The bank kept an accurate account with the Kelleys on its books, in which it credited all moneys sent it for investment, and against which it charged all disbursements made at their instance, including the deal last referred to. The Kelleys never remitted the money so collected upon the Alsaker note, or an equivalent sum, to the plaintiff; and some time after their insolvency, when the facts above stated became known, this suit was commenced to recover of defendants the amount due to the plaintiff in that transaction.

The case was tried by the court, who found, as an essential fact, in substance that

At the time of making the said Alsaker note and mortgage, and at all the times thereafter, the firm of A. F. & L. E. Kelley had no interest whatsoever in the said note and mortgage [or coupon], * * * but that, at the time of making the said Alsaker note and mortgage, defendants knew that the said George R. Milton was the sole owner thereof, and at the time of the collection of said sum of $1,035 said defendants knew that plaintiff herein was then the sole owner of the said Alsaker note and mortgage, and the said July, 1896, interest coupon.

The court also found the other facts which we have stated above at length and in detail, and held that the plaintiff was entitled to recover of the bank the money received on the Alsaker note, which the bank had applied in payment of the debt due it from the Kelleys. Defendants moved for a new trial, which was denied, from which order this appeal is taken.

We have no doubt that the evidence is sufficient to support the findings of the trial court. It was, among other things, established that, before the Alsaker note was due, the bank requested that the note be sent to it (through the Kelleys), in order to pay it and replace it by another loan upon the same land. The unindorsed note, with a satisfaction from the plaintiff, wherein the fiduciary character of the Kelleys' relation and duties appeared, was forwarded, and might well have furnished the knowledge of the ownership of the property which the trial court held to be in plaintiff. Upon well-understood principles, the facts thus found must necessarily be the basis of every legal conclusion we arrive at in this review; and the salient fact that defendants knew that the plaintiff owned the Alsaker note and mortgage, and the money collected thereon, when they appropriated it to pay the debt of the Kelleys to the bank, cannot be ignored by us, with its legal inferences.

It was zealously contended by the able counsel for defendants that, in view of the business methods between the Kelleys and the bank, this transaction was no different in character than if the bank had forwarded the money to the Kelleys, and the Kelleys had immediately returned it, to be applied on their note to the bank. As often occurs in argument by illustration, the supposed is not the real case. It lacks one element—a knowledge by the bank of the misappropriation—to complete the similitude. Again, it was asked with much plausibility whether the bank should have remitted the money of Mrs. Milton to her direct, to exonerate it. Of course, this was not the duty of the bank; but we doubt not that it was the duty of the bank to remit the money to the Kelleys, which was as far as the bank could go under its trust relations. But, instead of this, it kept the money to pay itself a debt due from plaintiff's agents; and there is little that affects this view in the suggestion that defendant bank, in the absence of proof that amounted to guilty knowledge or scienter, had a right to assume that the Kelleys would settle fairly with their principal when they closed their account with her, for the fact remains that neither the bank nor the Kelleys had the legal right to the money; it belonged to neither of them; it was the property of plaintiff; and it was, in the legal sense that follows, misappropriated and withheld in fact

by the Kelleys, who were aided by the bank, with actual knowledge of the true ownership.

There was, of course, no privity between plaintiff and the bank, except such as arises from the trust relation; but this relation was sufficient to create an obligation on the part of the bank to deal with plaintiff's money as its principals, the Kelleys, were required to deal with it and its owner. There was a privity between the bank and the Kelleys, and the bank must, by legal intendment, be charged with knowledge of what the Kelleys did, for it was the combined acts of both by which plaintiff was deprived of her property. It is the knowledge of the ownership of this money, as found by the court, which is the controlling element in determining the liability of the defendants, and subjects the bank to an action for money had and received, upon the rule that, where one has the money of another which he has no right to retain, the law implies a promise that he will repay it to the true owner. Brand v. Williams, 29 Minn. 238, 13 N. W. 42. The duties between the various parties in this transaction were confidential, and imposed trust obligations, which could be performed in only one way, viz. by promptly transmitting to the owner her property by the Kelleys; and in such cases

"The trustee's application of trust funds to the payment cf his own debts or in any way to his own use, is highly improper. A creditor receiving trust funds thus misapplied, or any one coming into the possession of trust property, with a knowledge of its character, stands in the trustee's shoes, and must account as trustee for everything so received." 27 Am. & Eng. Enc. 265. Perry, Trusts, §§ 211–298.

This rule is most rigidly enforced; for the law is solicitous to guard the relation of principal and agent in control of the trust funds in the remotest channels through which they flow, and it will not allow either the agent or subagent to assume for a moment that his principal's property is for his own use. Such improper assumptions in such dealings are often followed by loss to the principal, and work business and moral ruin to the agent. It therefore must be regarded as a correct principle of law that the least turning aside of the funds held in trust by the agent or subagent is

legally a wrongful act, and subjects any party who aids in any such diversion to full responsibility. If there is anything in the authorities cited by counsel for appellants that is opposed to these views, we cannot coincide with such doctrine; for the rule we state in its application to this case is not new in this court. It was sententiously stated by Gilfillan, C. J., in Leuthold v. Fairchild, 35 Minn. 99, 110, as follows (where the principle involved was the same as here):

"In a case where the agent or servant not only knows that disposing of the property is a wrong, but to some extent directs as well as performs it, he is to be deemed a party to the wrong."

It is elementary that a party cannot say that he does not know that an act is wrong, when its legal effect is obvious. In such case he must recognize the possible connection of his acts, and the probable legal effects that may follow. He must take no chances, with the expectation that courts will look complacently upon his misdirection of the funds trusted to his care by the beneficiary, and, being so presumed to intend the consequences of his acts, must be held responsible pecuniarily for the results that follow, although, as in the case of these defendants, his intentions may be just and honorable.

The order appealed from is affirmed.