ANTONIO MATALONE, Appellant, v. IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, Appellee.

No. 44705.

MAY 2, 1939.

REHEARING DENIED SEPTEMBER 29, 1939.

Lehan T. Ryan, for appellant.

Stipp, Perry, Bannister & Starzinger, for appellee.

HALE, J.—The plaintiff, Antonio Matalone, known also as Matalone Antonio di Gennaro, was a native of Italy living in Des Moines. From time to time he transmitted to and deposited in the Postal Savings Bank of the Kingdom of Italy various amounts of money, and on February 14, 1934, was the owner of a savings account in the Postal Savings Bank of Italy amounting to the sum of Lire 23,510.60, with interest, which was evidenced by a passbook of the Postal Savings Bank, No. 03944 73-63, in his favor.

The plaintiff desired to withdraw his savings, and proceeded in the form prescribed by the authorities of the savings bank. In order to do so it was necessary that there be an instrument sent with the passbook, which is known as a procura, corresponding to an affidavit. It was necessary that this procura be attested, or, as is designated throughout the pleadings, legalized, by the Italian consul. There was no consul at Des Moines, but he had a representative in such city, one Harold E. Toson, who was president and principal owner of H. E. Toson & Company, and who was afterwards convicted and sentenced to the penitentiary at Fort Madison. The plaintiff, on February 14, 1934, went to Toson and told him that he wanted to withdraw his money, whereupon Toson prepared the procura and received plaintiff's passbook, issuing him a receipt as follows:

"We shall receive and forward all items for collection at the risk of and as agents for the owner and we assume no responsibility for neglect, default or failure of any of our corre-

spondents nor for losses occurring in the course of transmission. H. E. Toson & Company Steamship Agency—Foreign Exchange Foreign Securities 511 Sixth Avenue Des Moines, Iowa, Feb. 14 1934 Received of Matalone Antonio di Gennaro Libretto #03944 73/63 Lit. 23510 60 Per Riscuoter Capitate e Interessi Casse di Risparmio Postali, Roma, $Lit. 23510 60 H. E. Toson & Co."

The procura was in the Italian language, but at the trial a translation was prepared, reading in part as follows:

"Special Affidevid.
"To Acquire Reimbursements From
"The Italian Postal Savings

"In the year Nineteen Hundred Thirty-four the 15th day of February, in the City of Des Moines, County of Polk, State of Iowa, in the United States of America.

"Before me, H. E. Toson, Notary Public, fully authorized for this City and County, with Notary Office at 511 Sixth Avenue, and at the presence of Mr. V. A. Iddings and Mr. P. S. Cosine, witnesses of this act whom have the full requisites demanded by the law.

"Personally came Mr. Matalone Antonio di Gennaro, of 41 years of age, born at Scala, Coeli, and formally resided at said Scala, Coeli, Province Cosenza, now residing at Des Moines, Iowa, United States of America, known by me and the witnesses and who has the full Juridicial capacity in virtue of this act, by his own free will has nominate and authorizes as his agent the Bank of Rome in Rome, Italy; by given to it the faculty to withdraw in his name and in his behalf the money sent to Postal Savings of the Kingdom of Italy, the sum of Lire Twenty-three Thousand Five Hundred and Ten and 60/100 (L. 23,510.60) with the interest entered to the credit of the Pass Book of the Postal Savings No. 03944 73-63 at Rome, dated June 6th, 1922, in favor of Matalone Antonio di Gennaro." (Duly signed, witnessed, and attested by the notary.)

After being attested by the consulate at St. Paul, this procura, with the passbook, was taken by Toson to the defendant bank and by it transmitted to the Chase National Bank of New York, which sent the instrument and passbook to the Banco di Napoli in Italy, and on April 11, 1934, the proceeds were credited by the Chase National Bank to the account of the defendant.

At the time of the delivery of the procura and passbook by Toson to the defendant, Toson handed the bank a letter, as follows:

"February 17, 1934

"Iowa-Des Moines National Bank,

"Des Moines, Iowa.

"Gentlemen:

"Kindly enter for collection through the Chase National Bank of New York, Italian Postal Savings Bank Book No. 03944 (73/63) Lit. 23,510.60.

"Attached you will find Power of Attorney properly signed by the owner, two witnesses and Notary Public, having been legalized by the Italian Consul.

"When the item is collected and credited to your account, kindly credit our account under advice.

"Borrowed 2/19/34   Very truly yours,

"$1600.00      H. E. TOSON,

"HET:VI       President.

"enc.

"Feb. 19 1934 Iowa-Des Moines National Bank & Trust Co.

"E. M. Figthe."

Toson, or Toson & Company, borrowed of the bank on February 24, 1934, the sum of $1,600, giving a collateral note payable ninety days after date, with interest at eight percent, and secured by Italian Postal Savings Bankbook No. 03944 73-63, Lire 23,510.60, value $2,050. This note was signed by H. E. Toson & Co., by H. E. T., and was marked paid on April 7, 1934. The note provided that the holder was authorized at any time to apply any money or moneys, or any other securities or properties of any kind that the holder might have on deposit or otherwise, toward the payment of the note, whether due or not.

On receipt of advice from the Chase National Bank that the proceeds had been therein deposited to the credit of the defendant, the defendant credited the account of H. E. Toson & Company, and by letter advised such company of the receipt of $2,099.10 less New York expense of $2.62 less note of $1,600 and interest of $16.71, and less bank exchange of $1.00, leaving the net credit of $478.77 credited to the Toson & Company account. The letter also states that the canceled note referred to above is inclosed, and a duplicate deposit slip showing the credit

to Toson & Company. The amount credited to Toson was subsequently checked out.

Neither Toson nor Toson & Company ever settled with the plaintiff, and eventually, the company being seriously involved, a trust agreement was made between Toson and various creditors. This instrument was dated June 21, 1934, and by its terms Toson & Company transferred to certain trustees their assets, and also the homestead of H. E. Toson and wife, and agreed to secure a term life insurance policy of $15,000 and to pay the premium thereon, and also a personal note of H. E. Toson for $12,500, for the purpose of paying claims and demands and to distribute them among the creditors. The creditors, who were third parties to the agreement, agreed while the instrument was in force not to sue, attach, or molest either Toson & Company or H. E. Toson; that the trust agreement might be pleaded as a defense to any action which might be brought by any of the third parties against Toson & Company or H. E. Toson, in a breach of the covenant. The trust was accepted by the trustees, and on July 11, 1934, the plaintiff signed a written consent accepting the trust agreement and agreeing to accept in full satisfaction of his debt against Toson & Company such dividend or dividends as might be declared and paid by the trustee or trustees. In this consent to the trust agreement the amount of the claim of plaintiff was stated to be $2,031.95. Under this trust agreement two dividends were declared, one for thirty percent and another, later, for one percent, which were received by the plaintiff, being in the sums of $616.80 on July 26, 1934, and $20.31 on May 11, 1936.

Suit was begun by plaintiff against the defendant by filing, on December 20, 1937, a petition in the district court of Polk county. While the action was pending, and on January 14, 1938, plaintiff filed a notice of rescission, which was served on Toson and Toson & Company at the Fort Madison penitentiary; and also upon the trustees a notice of rescission of the trust agreement and an offer to do equity.

The plaintiff claims that at the time of the signing of the trust agreement he had no knowledge of the transaction at the bank or that the bank was involved. Plaintiff in his petition asks for an accounting and for judgment against the defendant for $1,616.71, with interest, and for general equitable relief. The defendant denies generally and alleges that Toson & Com-

pany were the agents and representatives of the plaintiff; ratification by the plaintiff; and estoppel.

On the issues made by the pleadings trial was had to the court, and on April 2, 1938, decree was rendered in favor of the defendant; and from this decree appeal is taken to this court.

I. The plaintiff, as his first assignment of error, urges that the defendant, having actual knowledge that the money belonged to the plaintiff, could not apply part of it on the note owing the bank by Toson & Company.

We do not think the evidence supports this contention. Testimony of plaintiff himself is in various respects contradictory. The instrument as above stated, with the bankbook, was placed in the hands of plaintiff's agent, and the transaction throughout was similar to other transactions of the same nature. The evidence shows that there had previously been collections of this nature made through the agency of Toson & Company, who were apparently advisers for their Italian acquaintances throughout the community. Testimony showed that they had not only done business of this nature for others, but for the plaintiff. This at first plaintiff denied, but afterwards admitted. Only one other transaction such as the one in controversy between Toson and plaintiff was shown by the evidence, but there is testimony that others between the same persons had taken place. Also it is indicated that in some cases, on account of the necessarily long delay in securing the proceeds, Toson & Company had advanced the money on the passbooks and had obtained these advances from the defendant bank. Apparently the bank had no reason to believe that this present arrangement was different from others of the same nature, and probably considered that the advance by it to Toson, which occurred at practically the same time, was for the purpose of advancing payment to the plaintiff. The only ground for imputing knowledge to the defendant would be the wording of the procura, which indicates the Italian savings account by the name of plaintiff. The method of obtaining the fund appears to have been the custom in the past. The party named to withdraw the postal savings fund was the Bank of Rome, but the plaintiff placed in the hands of Toson all instruments necessary to procure the collection.

It has been held that, by the leaving of either negotiable paper or nonnegotiable choses in action or security in the hands

of another, such as may be transferred without the execution of further documents, the owner thereby creates an appearance of ownership or control in the custodian, and as against an innocent party who has acted in reliance on the appearance thus created, he is estopped. As to the rule as to negotiable paper, defendant cites Bureau Marketing Service v. Lewis, 220 Iowa 662, 263 N. W. 7; Blacher v. National Bank of Baltimore, 151 Md. 514, 135 A. 383, 49 A. L. R. 1366; Italian-American Bank of Denver v. Carosella, 81 Colo. 214, 254 P. 771, 58 A. L. R. 250; and, as to nonnegotiable choses in action, Herman v. Connecticut Mut. Life Ins. Co., 218 Mass. 181, 105 N. E. 450, Ann. Cas. 1916A, 822; Powers v. Pacific Diesel Engine Co., 206 Cal. 334, 274 P. 512, 73 A. L. R. 1398; Heymann v. Hamilton Nat. Bank, 151 Tenn. 21, 266 S. W. 1043; Baker v. Davie, 211 Mass. 429, 97 N. E. 1094; McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341; National City Bank of Chicago v. Wagner, 7 Cir., 216 F. 473; Mudge v. Railway Mail Equipment Co., 167 Iowa 656, 149 N. Y. 867, all of which cases support defendant's contention. See, also, Whitney v. Krasne, 209 Iowa 236, 246, 225 N. W. 245, 249, and cases therein cited. Kinsey v. Massey, 204 Iowa 758, 216 N. W. 54, a bailment case; Rhodes v. Uhl, 189 Iowa 408, 178 N. W. 394, involving a fraudulent land deal; Mau v. Rice Bros., 216 Iowa 864, 249 N. W. 206, and Evenson v. Waukesha Nat. Bank, 189 Wis. 170, 207 N. W. 415, as to liability for stolen certificate of deposit, cited by plaintiff, are not contrary to this rule.

It was known to the defendant that Toson was the representative of the Italian consul, engaged in transactions involving Italian exchange, and had been empowered not only by others but by the plaintiff himself to act in transactions of the same kind. The method pursued was the customary one in collections of that kind. Toson came armed with the necessary savings book and certificate of withdrawal, or procura, which necessarily included therein the name of the plaintiff. This would indicate an apparent authority on the part of Toson to transact the business. While the plaintiff denies any express authority to Toson, yet his conduct in the matter was such as to create an apparent authority in his friend and adviser.

Instances similar to this transaction and involving the collection of Italian savings accounts, where the same procedure was followed, have been passed upon by the courts. In Chiarello

v. Savoy Trust Co., 141 N. Y. App. Div. 141, 125 N. Y. S. 1069, Chiarello gave his Italian passbook to the banker with a request to obtain the money from Italy for him. The banker forged a power of attorney and delivered the passbook to the defendant bank. Money was advanced on the account by the bank, which had the procura legalized by the Italian consul and forwarded the passbook and the procura for collection. The private banker who had been entrusted with the account failed to pay the plaintiff, and the holding of the court was that the private banker was authorized to collect the money, that the defendant did its full duty by paying the plaintiff's agent, and that the advancement to such agent was the equivalent to paying him after collection. In the instant case the plaintiff voluntarily put his certificate of withdrawal and passbook in the hands of Toson. The above case holds that the apparent authority thus given authorized the bank to credit the agent in full, although the power of attorney was forged.

The holding in the case of Santa Barbara v. Pasquale Avallone & Stefano Miele, Inc. (1935), 243 N. Y. App. Div. 357, 277 N. Y. S. 233, is to the same effect. In this case the bonds and certificates of deposit were placed in the hands of an agent for collection. Such collection was made through a bank, credited to the agent's account, and not accounted for to the plaintiff. The holding was for the defendant on the grounds that there was no privity of contract between plaintiff and defendant, and because the defendant bank had no knowledge of plaintiff's right, although, as a matter of fact, the bonds and certificate were in the name of the plaintiff.

Plaintiff relies on the case of Milton v. Johnson, 79 Minn. 170, 81 N. W. 842, 47 L. R. A. 529, where the bank which held the account for collection applied the proceeds upon a pre-existing indebtedness of the agent, and the court found as a fact knowledge of the defendant bank that the agent had no interest in the note and mortgage handed to the bank for collection. This case states definitely that the bank would not have been liable if it had paid the proceeds to the agent, but that it had no right to apply the proceeds on a private debt of the agent which was known to the bank to be such private debt. To the same effect, see Thompson & Co. v. Barnum & Co., 49 Iowa 392, cited by plaintiff. The circumstances of the present case are different from those in the case cited by plaintiff. The

$1,600 given at or about the time of the transaction and transmission of the papers to Italy was apparently an advance on the passbook and procura placed in the bank's hands by Toson. It seems to us that it can make little difference whether the money was advanced by the bank in anticipation of the receipt of the funds at a later time or whether the bank waited until the money was credited to it in New York and then turned the proceeds over to Toson. In the latter event there would have been no question of any liability on the part of the bank. Milton v. Johnson, supra; Griffin v. Erskine, 131 Iowa 444, 109 N. W. 13, 9 Ann. Cas. 1193, cited by plaintiff. Interest was charged only for the period during which the withdrawal was being accomplished through the various banks in New York and Italy. We think the evidence shows, as was held by the lower court, that the defendant had no knowledge of any wrongdoing on the part of Toson, or that the $1,600 loan was anything more than an advance on the amount to be collected from the Italian bank. We are satisfied that the defendant was justified in making payment to Toson, under the facts as shown by the evidence.

II. When it became apparent that Toson (or Toson & Company) was in financial difficulty, his creditors entered into an arrangement in the form of an assignment, not only of Toson's property subject to execution but other property to which no right of any creditor could attach. To this arrangement the plaintiff was a party, and under it he received dividends amounting to thirty-one percent of his claim. It is insisted by defendant, and as strenuously denied by plaintiff, that this was a relinquishment of all of plaintiff's rights, and that the composition arrangement was a ratification of the actions of his agent. The plaintiff also urges the offer of rescission. It is not necessary to consider these phases of the case, which have been thoroughly and extensively argued, as our holding on the foregoing proposition disposes of all matters necessary to be considered.

From our examination of the record in the case we are disposed to agree with the conclusions of the court as to the effect and credibility of the evidence received. At the least, the finding of the lower court is a circumstance to be considered in dealing with questions of fact. See Mudge v. Railway Mail Equipment Co., supra. Our own conclusions coincide with those

of the district court, in view of the evidence showing previous transactions, the method in use in carrying out such collections, and the knowledge of the plaintiff as to the manner in which it was to be done. On the whole case we feel that the lower court was right, and its decree should be affirmed.—Affirmed.

MITCHELL, C. J., and RICHARDS, HAMILTON, SAGER, and MILLER, JJ., concur.