WILLIAM R. MERRIAM v. J. A. JOHNSON.[1]

April 25, 1902.

Nos. 12,915—(49).

## Purchase of Principal's Property by Agent.

A real estate agent, who induces the owner to fix a net price upon certain property, upon the supposition that a sale is to be made to a third party, cannot himself purchase the property and by such transaction, in any event, realize a greater profit than a reasonable commission in addition to the net price.

## Same—Accounting.

If the agent is himself the purchaser, using a third party as a medium through whom to secure a deed to the premises from the owner, and then sells at an advance, he will be held accountable to the owner for the profit realized.

## Complaint Good.

Complaint examined, and held to state a cause of action at law for money had and received.

1 Reported in 90 N. W. 116.

**Judgment not Sustained.**

>   Evidence not conclusive as to the nature of the contract between the owner and agent, and the court erred in ordering judgment for defendant notwithstanding the verdict.

Action in the district court for Stevens county to recover $3,840, and interest, for money had and received. The case was tried before Powers, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order granting a motion for judgment in favor of defendant notwithstanding the verdict, plaintiff appealed. Reversed, and new trial granted.

*John F. Fitzpatrick,* for appellant.

*Harrison E. Fryberger,* for respondent.

LEWIS, J.

Appellant, a resident of St. Paul, owned a section of land near Morris, in Stevens county, Minnesota, which, during the years 1896, 1897, and 1898, he had placed in the general charge of respondent, who was a real estate agent residing at Morris, for the purpose of renting the premises, collecting the rents, reporting the amount of taxes paid, when requested, giving advice as to necessary improvements, and also to sell the same, upon terms satisfactory to appellant. On September 10, 1897, respondent submitted to appellant an offer of $7,500 for the property, asking a commission if accepted. To this appellant replied that he would take $8,000, upon certain terms, but that such amount must be net to him, and that, if respondent wished, he might have for his commission the rents, whatever they were, for the year 1897, to which respondent answered, in part, as follows:

"Yours of Sept. 11th at hand, and contents noted. The only show for me to make anything out of this transaction on the terms you propose is for you to grant me some concessions. If it is impossible to sell the land at any lower price than you have named, and if I must get my commission out of the other party, I want to stipulate: 1st. That you will leave the consideration in the deed blank, and authorize me to fill in any amount which I see fit before delivery of the deed to the purchaser. I do not myself know at this time what amount I should want to fill in, but it would be either a larger amount than the net amount to you, or else simply the sum of $1. The parties who are buying

the land want to use it in a trade, and it is quite possible that they may want to have the consideration increased to a sufficient amount to fit the trade, it being a well-known fact that property is generally valued somewhat higher for the purpose of trade than on a cash sale."

Thereafter long negotiations followed, from which it appears that another proposed sale of the farm to certain Iowa parties was pending, and that respondent was to collect his commission from the purchaser. But this deal was not consummated, and in 1898 the matter of sale was again taken up by appellant in a letter of March 11, in which he expressed the hope that the property was worth $15 an acre; that he did not wish to sacrifice it, and could not at that time tell what it was worth, and closing the communication with the hope that respondent could dispose of the land, as he wanted him to obtain the commission. On March 29, 1898, appellant again wrote respondent, inquiring about the probabilities of a sale, stating that, of course, he did not want to have the land offered through other parties so long as respondent thought he might be able to sell it, and that he would send him anyone wishing to buy it. Then followed several letters in respect to rents, taxes, improvements, prospects of sale, etc. On August 22, following, respondent wrote appellant at some length, describing the foul weeds and grasses infesting the land, and the poor condition of the improvements, the possibility of making a sale at $10 per acre, and closing with this paragraph:

"Meanwhile, if you think there will be any use submitting an offer of $10 an acre I will see the parties I have in view, and arrange a sale if possible; but I know positively that they would not pay more than that price."

Appellant answered, on August 24, as follows:

"I have yours of the 22nd. If you can dispose of the Heehan farm at once for $6,400 net to me, you can do so. The offer, however, will not be held open but a short time, as I think it too little for the land. For the purpose of closing at once, I will accept that sum."

On August 26 respondent again sent appellant a discouraging

letter as to the condition of the land, the prospects for a crop, and the likelihood of a sale at a figure exceeding $8 an acre

The next communication with reference to this sale was written by respondent on September 13, from which we quote as follows:

"Pursuant to your offer of Aug. 24th to sell the Heenan farm, Sec. 25-126-42, Stevens Co., for $6,400, I have been showing the land to different parties, and can now close up a sale at once at that figure. * * * Money is ready to close at once this time without any delay. Please wire me if the terms are satisfactory; if so, will give name of party to whom deed should run, and further details of closing. Above price to be net to you, and I to have what I can get above that for commission."

Replying to which appellant telegraphed this message:

"Offer accepted yours of thirteenth; send in name of purchaser;"

and this was followed by a letter of the same date, September 15, stating terms of sale accepted, and containing this closing clause,

"There will be no charge for commission, as I understand."

On the same date respondent wrote, acknowledging receipt of the telegram, and directing that the deed be made to Mealon Cousins, of Morris, a single man, also stating that the purchaser would, of course, want a warranty deed. In this letter was the following request:

"Now as to the consideration in the deed, I want you to make that $10,000. I will pay for the extra revenue stamps. You have doubtless dealt in real estate enough to know the desirability of this without any argument from me. It helps me on a future sale of the property, especially if it is to be used in trade."

On September 19 respondent again wrote a letter containing this,

"If you seriously object to increasing the nominal consideration, please put in $1.00 and other valuable considerations."

The deed was executed on September 16, the consideration being, "One dollar, and other valuable considerations," and on September 19 the appellant notified respondent by letter that it

would be sent through the Merchants National Bank of St. Paul to a bank at Morris, with note and mortgage for signature, and directing respondent to deduct from the cash payment of $1,400 the taxes and expenses of recording papers. The note and mortgage were executed by Cousins, but he was not, in fact, the purchaser. Respondent himself bought the land, having furnished the money for the cash payment and taken the deed to the property from Cousins. On the same day of respondent's letter of September 13 advising appellant that he had parties ready to close the sale at $6,400, pursuant to terms previously submitted by appellant, the respondent personally closed up a contract for the same property to certain persons, two brothers named Akemann, at $16 per acre, which contract was afterwards complied with by the purchasers, and respondent retained whatever difference there was in this deal over the purported sale to Cousins. This action is to recover the full amount of the extra $6 per acre.

At the close of the evidence, each party moved the court to direct a verdict in his favor. The court complied with plaintiff's motion, ordering a verdict in his favor for the full amount of the difference, with interest, but thereafter, upon defendant's motion in the alternative for judgment in his favor notwithstanding the verdict, or for a new trial, the court set aside the verdict, and ordered judgment for defendant; from which order the plaintiff appealed.

1. Error is assigned upon the ground that this case was equitable in its nature, and should have been tried by the court without a jury. The complaint proceeds upon the theory that respondent secured possession of the land by false representations, and sold it to innocent persons, retaining the proceeds. The case comes within the elementary rule stated in Brand v. Williams, 29 Minn. 238, 13 N. W. 42: "An action for money had and received can be maintained whenever one man has received or obtained the possession of the money of another which he ought, in equity and good conscience, to pay over." This may not have been appellant's exclusive remedy, but the facts pleaded present an action at law.

2. It is our opinion that the court should have submitted the

question of fact to the jury whether the contract was as appellant claimed or as respondent claimed, namely, that he should have the privilege of selling the land at any price above $10 per acre, in any way he chose, even to himself. In view of a new trial, we have referred to the correspondence in detail, since it is upon that appellant relies, and we unhesitatingly hold that, if those letters constituted the only communication between the parties hereto, they conclusively prove that appellant employed respondent to sell the land for him at the best price obtainable by him, with his experience and ability as a real-estate agent; that his compensation for such services was to be a reasonable commission to be paid by the purchaser; that appellant deeded his property to Cousins upon the supposition that he was the purchaser in fact, not knowing that respondent was buying the land himself, and even before so doing had sold it at an advance of $6 an acre. Hegenmyer v. Marks, 37 Minn. 6, 36 N. W. 785; Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719; Crump v. Ingersoll, 47 Minn. 179, 49 N. W. 739; Donnelly v. Cunningham, 58 Minn. 376, 59 N. W. 1052.

There was some oral testimony on the part of respondent tending to show that a verbal agreement was entered into, exclusive of the correspondence. As to whether such evidence was admissible, and what effect it would have upon the contract contained in the letters, we reserve our opinion. The evidence, as disclosed by the record, does not establish a case in appellant's favor with that degree of certainty which would justify us in directing a judgment in his favor. The question of fact as to what the contract was should have been submitted to the jury. We therefore hold that the court erred in directing judgment for respondent.

It is not to be inferred from what we have written that respondent would be entitled to a reasonable commission in case of fraud. On that question we express no opinion.

Order reversed, and a new trial granted.