## CHRYSTAL v. GERLACH.

An action against a real estate dealer for the difference between what he sold plaintiff's land for and what he paid over to her, less actual disbursements, on the theory that by misrepresenting the transaction to plaintiff the dealer had forfeited his right to any commission, is an action at law, and not of exclusive equitable cognizance, on the ground that it involves the establishment of an involuntary trust and an accounting thereunder; for, while the facts show that the dealer became a trustee of the proceeds, yet such trusteeship was entirely closed and the amount due plaintiff fixed, being the amount received by the dealer, less disbursements.

A party who did not object to the trial of an action before a jury should not be heard to complain on appeal that it was of exclusive equitable cognizance.

A party who did not request the submission of an issue should not be heard to complain of the failure to do so.

Acceptance of an amount to which a party is clearly entitled does not constitute an accord and satisfaction where there is no claim of facts showing an accord and satisfaction under Civ. Code, § 1180, providing that part performance, when expressly accepted in writing in satisfaction, extinguishes the obligation.

(Opinion filed, March 2, 1910.)

Appeal from Circuit Court, Brookings County. Hon. GEORGE H. MARQUIS, Judge.

Action by Mary Chrystal against Frank E. Gerlach. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*J. P. Alexander,* for appellant.

"Where an equity case is treated as an action at law, submitted to the jury, and the court considers itself bound by the verdict, the parties have the same rights to instructions that they have in an action at law and a refusal to give a correct instruction asked, or a misdirection of the jury is error." VanVliet v. Olin, 4 Nev. 95. A legal action for deceit inducing a contract ratifies the contract and the measure of compensatory damage is the loss sustained by reason of the fraud or deceit complained of to the

extent of the natural and proximate consequences of the wrong. Roberts v. Holliday, 10 S. D. 576, 74 N. W. 1034; Potter v. Necedah Lumber Co., 80 N. W. 88; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301; Carter v. Binninger, 33 N. J. 513. If an offer of money is made to one on certain terms and conditions, and the party to whom it is offered takes the money, though without words of assent, the acceptance is an assent de facto, and he is bound by it. Donohue v. Woodbury 6 Cush, 148; Fuller v. Kemp, 33 N. E. 1034; Marion v. Hembach, 64 N. W. 386; Brick v. Plymouth County, 19 N. W., Iowa; Tuttle v. Tuttle, 12 Mtc. 551. The mere fact that one party relies on false representations made by another to his injury does not constitute a cause of action against such other. There must be a further circumstance. Such person must be induced to rely upon such fradulent representations, and that circumstance does not exist where such person would not be so induced but for his own heedlessness. Bostwick v. Mut. Life Ins. Co., 89 N. W. 538; Farr v. Peterson, 64 N. W. 865.

*Hall, Roddle & Purdy,* for respondent.

Fraud vitiates every transaction at the suit of the party injured. Equity looks through terms and appearances to the true nature of the act and seeks to grant appropriate and adequate relief. There is no scheme so deep, no device so cunning, as to be impervious to its remedies. Burt v. C. Gotzian & Co., 43 C. C. A. 59. An agent undertaking the sale of property for his principal is estopped in an action brought by the principal to recover the avails of the sale, from denying the validity of the title by which his principal held the property at the time of the sale. Collins v. Tillou, 26 Conn. 368. Equity has cognizance only of *executory* and not of *executed* trust. There must be some act to be done by the trustee. An agency closed wholly, or on any distinct matter, as to which no act remains to be done by the agent, is not cognizable in equity under the head of trust. 22 Enc. Pl. & Pr. 17; Hindman v. Aledo, 6 Ill. App. 436; May v. LeClaire, 78 U. S. 50; U. S. v. First State Bank, 6 Otto. 30; Smith v. Frost, 70 N. Y. 65. Where an agent has committed a fraud on his prin-

cipal in the transaction of his agency he can receive no compensation, and if the principal, in ignorance of the fraud, pays the compensation the amount so paid may be recovered. Thus where it appears that an agent, without the principal's knowledge, makes use of his agency to acquire or promote interests which are directly inimical to those of his principal, he will not be allowed to recover compensation for his services. 1 Ency. of Law (2nd Ed.) 1102; Salomons v. Pender, 3 H. & C., 639; Hofflin v. Moss, 67 Fed. Rep. 440.

WHITING, P. J. This action was brought to recover of the defendant certain moneys which it was claimed the defendant had received as the agent of plaintiff upon the sale by such defendant of a certain tract of land belonging to the plaintiff; it being the claim of the plaintiff that the defendant was withholding money to which he was not entitled as such agent owing to reasons which will be hereinafter more fully set forth. The action was tried to a jury, and, the plaintiff having received a judgment entered upon the verdict of such jury in her favor, and the defendant having asked for a new trial herein, which new trial was refused, the defendant has appealed to this court from such judgment and from the order denying a new trial.

Many assignments of error have been preserved by the appellant, among them being one to the effect that the evidence was insufficient to justify the verdict; the others being based upon alleged errors of the court in ruling upon admission or exclusion of evidence, and upon the giving and refusing of certain instructions. A setting forth in detail of all the evidence in this case and of each and all of such assignments of error would necessitate extending this opinion to an unreasonable length. We therefore feel justified in a statement of the facts which to our mind it seems the evidence would fairly support, construing such evidence in favor of the respondent as it must have been construed by the jury in arriving at its verdict.

It appears that the land in question was situated in the state of Illinois. The plaintiff and her husband grew up in Illinois; the plaintiff having formerly lived upon the land in question. This

land had for years belonged to the father of plaintiff. The father was a man of some 80 years of age, and in the year 1906 he had left this land and had come to South Dakota to live with his daughter. The father being desirous to make his future home with the plaintiff, the father and daughter had entered into an agreement whereby the father conveyed to the daughter the land in question, reserving, however, a lien thereon to secure her promises to support him during his lifetime. At the times involved in this action, the plaintiff, together with her father and husband, was residing near Elkton, S. D. The defendant was a real estate agent, doing business as such at Elkton, S. D. He had formerly resided in a town in Illinois close by the land in question, and for years the plaintiff, as well as her husband and father, had been well acquainted with the defendant; he having been formerly a business man in his Illinois home town, and the plaintiff and her people having traded more or less with him. The land in question was heavily incumbered with a mortgage, upon which there was considerable interest past due. Plaintiff's father had become indebted to various parties before leaving Illinois, and such parties had proceeded to place their claims in judgment. An attorney who had formerly done business for the father wrote, advising of the fact that parties were seeking to enforce claims against this land, and advising that, unless something was speedily done, the land was liable to be taken and nothing realized on behalf of the party claiming to own same. Plaintiff, knowing that defendant was acquainted with this land and having confidence in defendant's integrity, went to him to ascertain if he could not sell this property for her. He agreed to investigate and see what he could do. The defendant made a trip to Illinois, looked up the condition of the title to some extent, and investigated as to what the land should be worth. He also procured an abstract to be brought down to date showing the liens and incumbrances against the property. This abstract, at defendant's request, was submitted for examination to an attorney by the name of Alexander, at Elkton, S. D. Defendant afterwards advised plaintiff that there was some $11,000 of claims against this land that would have to be paid to clear the title, and that,

owing to the condition of the title, it would be hard to realize the real value of the land. He also advised plaintiff that he was willing to go on and try to sell the property, but that, owing to the uncertainty of a sale, he would not undertake the same unless he was in some manner protected, and insisted that he be given an option to purchase the land in question, the condition of such option being that plaintiff should receive $7,000 net for her interest in said land. Plaintiff had thought her land to be worth much more than this, but finally consented to execute this written option, being influenced thereto by representations made to her by the defendant that there was $11,000 of claims against this land, and that it would leave but a small remuneration for him. Defendant also required that there be given to him a power of attorney executed by the plaintiff, her husband, and her father, giving to him full power to adjust the claims against this land, and to sell and to transfer same.

We think it clearly appears from the testimony that it was not the intention of the parties, and certainly not the intention of the plaintiff, that the relation of principal and agent should terminate upon the execution of the option contract, although it is the claim of the defendant that such option contract established the relation of the parties from the time of its execution, and that in what he did thereafter he was in no manner acting as the agent of the plaintiff. The evidence, however, shows that such option contract was not recorded, and that everything which the defendant did after the date of such option contract and such power of attorney, he purported to do under and by virtue of such power of attorney, and we think the evidence fully shows that the only purpose and effect of the option contract was to fix the amount of compensation which defendant should receive, and to protect him in such, which compensation he would receive as the agent of plaintiff; the effect being the same as an agreement for him to sell the land, and receive as commission all he obtained above a certain amount.

The evidence is amply sufficient to show that plaintiff would never have agreed to defendant's receiving all above the $7,000 and the amount of the incumbrances, if she had not supposed the

incumbrances to aggregate the amount represented to her by the defendant. The evidence is also ample to show that the defendant must have known that such incumbrances, instead of aggregating $11,000 aggregated considerably less than $10,000, towit, about $9,500. Defendant, however, contends that he did not represent the incumbrances to be $11,000 or any other amount other than stating what they actually were; furthermore, defendant contends that plaintiff in any case could not claim fraud and misrepresentation on the part of defendant, for the reason that the abstracts were in plaintiff's hands, and that from such abstracts she could have ascertained what there was against the land. It, however, appears that plaintiff placed confidence in defendant in relation to this matter, and that defendant must have known she was relying upon his representation. It also appears that the plaintiff was not a person competent to determine from the abstract the exact condition of the title and the amount of the incumbrances, and that the attorney Alexander, to whom, at the request of defendant, such abstract was submitted, was interested with the defendant in the commissions defendant should receive from this land deal, and therefore plaintiff should not in any way be bound by what such attorney may have ascertained from such abstract.

· Defendant afterwards entered into a contract acting as attorney in fact for plaintiff, her husband and father, whereby he contracted to sell this land for the sum of $19,200. Plaintiff claims that she was not advised as to the amount defendant expected to receive upon sale of the land, but was led to believe that, if a sale was consummated, it would be at a comparatively small figure above the incumbrances and the said $7,000. Appellant contends that plaintiff was advised as to what defendant expected to receive for the land under such contract. We consider this matter unimportant, for the reason that the misrepresentations concerning the incumbrances were sufficient to annul and set aside any agreement that plaintiff had made in regard to the compensation of defendant, and it was unnecessary, in order for plaintiff to recover herein, to show further lack of good faith or fraud in concealing the selling price of the land. Defendant, purporting to act as attorney in fact for plaintiff, not only en-

tered into the contract for the sale of the land, but also had, out of moneys advanced upon such contract, and claiming to act as such attorney in so doing, paid off certain of the claims against this land. After the contract for sale was entered into, the prospective purchaser raised further objections to the title, owing to the fact that a guardian of certain grandchildren of plaintiff's father had filed notice of an intended action in the Illinois court to set aside the deed from the grandfather to the plaintiff. The prospective purchaser insisted that this guardian would not settle the claims on behalf of his wards for less than $2,200, and upon such representation the purchaser, acting with the defendant, induced the plaintiff to consent to pay $1,000 towards settling with such guardian; she agreeing to receive $6,000 instead of the $7,000 for her interest in the land. The plaintiff and her husband, as well as her father, executed the necessary deeds to convey the title to these lands to the purchaser named in the said contract entered into by the defendant as attorney in fact, and such purchaser paid over to the defendant the sum of $10,000, the purchaser also paying the amount of the mortgage and the taxes against the place, and settling with the above-mentioned guardian. The defendant paid out of such $10,000 the sum of $1,857.13, leaving him $8,142.87. The evidence shows that defendant expended for his actual expenses in connection with this transaction $187, leaving, after the payment to plaintiff of the $6,000, the sum of $1,955.80. Furthermore, the evidence shows that the purchaser had retained a certain sum to be applied in straightening up some apparent defects in the title and that there was still due on such sale the further sum of $581.33, which would make the commission claimed by defendant, over and above his actual expenses, a trifle over $2,500. It was to recover this sum that plaintiff brought this action; it being her claim that defendant, through his fraud and misrepresentation, had forefeited all right to any compensation as agent other than to be reimbursed for his actual expenses. The facts as alleged in the complaint herein, included substantially those hereinbefore set forth, although there were grounds for further relief pleaded which need no attention for the reason that the verdict and judgment was in no manner based thereon.

Appellant summarizes his contentions on this appeal as follows: "(1) The cause of action set out in the complaint involved the establishment of an involuntary trust and an accounting thereunder, while the amount claimed to be due remained unliquidated, and depended upon the adjustment of many disputed questions, and was therefore exclusively cognizable in equity. Consequently the complaint stated no cause of action which would sustain a judgment rendered on a general verdict. (2) The cause of action stated in the complaint was based on the claim that defendant was employed by the plaintiff as an agent, and in that capacity was guilty of bad faith whereby he became an involuntary trustee for plaintiff of the proceeds of the sale of her farm, which she sought to recover in this action. The contract of agency was denied and the evidence on that issue was conflicting. The trial court, in his charge, ignored the issue of agency, but directed the jury to return a verdict for plaintiff for the amount computed by him to be due on an accounting as an involuntary trustee, if they should find that defendant had secured the plaintiff's signature to a certain option contract, upon which he based his right to retain the disputed portion of the proceeds, by fraudulent representations, unconditioned by any requirement of a finding as to agency. This was an assumption by the court of a disputed issue on which the proof was conflicting. (3) The court in the same instruction withdrew from the consideration of the jury, and himself decided adversely to the defendant the disputed issue as to the authority of defendant under his contract with plaintiff to incur a certain obligation for services in the sale of the land, upon which issue also the evidence was conflicting. (4) A notice stating the purpose for which a tender was made to plaintiff and accepted by her was offered in evidence in proof of defendant's defense of settlement, accord, and satisfaction, and was rejected by the court, although the same was relevant and material for the purpose offered. (5) There was no legal evidence of the making of any fraudulent representations referred to in the instructions of the court and by him submitted to the jury, as statements of existing facts, or of plaintiff's reliance thereon, or of the falsity of such statements, and the uncontradicted

evidence shows that she ratified the contract, charged to have been obtained by fraud, with full knowledge of all the facts regarding which she claims to have been deceived."

The appellant is clearly in error in his first contention, for the reason that, while the facts pleaded would show that the appellant became a trustee for the plaintiff of the proceeds received from the farm, yet such trusteeship was entirely closed and the amount due to the plaintiff was fixed, being the amount received by such trustee less the actual expense of executing the trust. In principle this case is similar to that of Merriam v. Johnson, 86 Minn. 61, 90 N. W. 116. In that case the complaint showed that an agent to sell land, while claiming to sell to a third party, really made the sale to himself through such third party as a dummy, while at the same time such agent had entered into a contract to sell the land at a greatly increased valuation to still another party. It was claimed that the action against the agent was equitable in its nature, and should have been tried by the court without a jury. The court said: "The complaint proceeds upon the theory that respondent secured possession of the land by false representations, and sold it to innocent persons, retaining the proceeds. The case comes within the elementary rule stated in Brand v. Williams, 29 Minn. 238, 13 N. W. 42. 'An action for money had and received can be maintained wherever one man has received or obtained the possession of the money of another which he ought in equity and good conscience to pay over.' This may not have been appellant's exclusive remedy, but the facts pleaded present an action at law." So in this case the complaint clearly set forth facts showing that the defendant had in his possession moneys which in equity and good conscience belonged to the plaintiff, and the plaintiff was entitled to sue at law to recover the same. Furthermore, this case was tried before a jury without objection on the part of the appellant.

As to the second contention of appellant, we would say that, while the defendant denied his agency, yet the evidence showed beyond all dispute that everything appellant did in this matter he did as the agent of the plaintiff; furthermore, under the evidence of the defendant himself, it was practically conceded that he was

the agent of plaintiff up to the time he claims to have taken the option contract; and, inasmuch as such contract was void on account of the fraud practiced by appellant, it becomes immaterial as to what was the intent of the parties in excuting such contract. It leaves the relation of these parties simply that of principal and agent, so that the appellant was in no manner prejudiced or injured through the failure of the court to submit the question of agency to the jury. It might also be suggested that the appellant failed to request that such question be submitted to the jury. There is no claim but what the question of fraud was fairly submitted to the jury, and therefore the only question would be as to whether the court was justified in instructing the jury, as it did, that the defendant, if liable, was liable to account for all the money received by him, less the amount paid out on liens against the land and the amount which defendant had proven he had expended in making the sale. The defense of appellant was solely that in making this deal he was not acting as agent, but in accordance with his rights under the so-called option contract. He in no manner attempted to show what a reasonable commission would have amounted to; neither did he show the expenditure of any moneys except such as he was credited for. Undoubtedly the appellant, conceding his agency, might, if he had seen fit, have made a good defense by showing that whatever representations he made as to incumbrances against the land were made honestly, and, as he believed, correctly and truthfully, under which circumstances he certainly would have been entitled to have received the amount which it was understood he was to have received; he being liable simply to account to his principal for such sum over $6,000 as the $11,000 exceeded the actual incumbrances and claims against the land, but having forfeited his rights to recover the compensation contemplated by the original agreement of these parties, even if it should be conceded that, regardless of his fradulent conduct, he was entitled to the reasonable value of his services, yet, inasmuch as there was no evidence whatever in relation to the value of the same, the court was fully justified in directing the jury, if it found in favor of the plaintiff, to bring in a verdict for the full amount received by the defendant, less the actual outlays of defendant.

Under the third contention of the appellant, it is claimed that the court wrongfully withdrew from the jury the question of the right of the defendant to be credited for an obligation which he claims he had entered into to pay the attorney, Alexander. Sufficient answer to this is to say that no evidence was offered to show the value of Alexander's services. Neither was there any evidence to show that defendant had obligated himself to Alexander other than that there was an agreement between the defendant and Alexander under which they were to share the net commissions going to the defendant. If defendant is right in this contention, then all that would be necessary to prevent plaintiff's recovery of her just dues would be for defendant, in a case of this kind, to show that he had entered into an agreement under which some third person was to receive the moneys going to him without any showing of services rendered by such third person on behalf of the plaintiff or, if there was such showing, yet without any showing of the value thereof.

The basis of the fourth contention was an attempt on the part of the defendant to show he tendered to the plaintiff the $6,000 in full settlement and that she accepted the same, and that, therefore, there was an accord and satisfaction. Suffice it to say that the facts claimed would not constitute a binding accord and satisfaction, for the reason that plaintiff was entitled to the full $6,000 which it was claimed was tendered and accepted by her, and there was no claim of facts showing an accord and satisfaction, under section 1180 of the Civil Code, to the effect that the "part performance of an obligation, either before or after a breach thereof, when expressly accepted by the creditor in writing in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation."

As regards the fifth contention, we would say that to our mind the evidence fully justified the jury, under the instructions of the court, in finding that the defendant made false representations for the purpose of defrauding the plaintiff, and that the plaintiff relied thereon, and, furthermore, there was no evidence to show that the plaintiff ever ratified the option contract with knowledge as to the true state of the facts material herein.

The judgment of the trial court and the order denying a new trial are affirmed.