CURRAN et al., Respondents, v. KENT, Appellant.

(153 N. W. 142.)

(File No. 3758. Opinion filed June 19, 1915.)

**1. Agency—Brokers—Sale of Realty—Sale to Themselves—Repudiation by Principal—Insufficiency of Findings.**

Plaintiffs, real estate agents, wrote defendant that they had a party who might be interested in a purchase of plaintiff's lot. Defendant's husband replied that they would be glad to sell for

a reasonable price, and asked plaintiffs' opinion as to its value. Plaintiffs answered that, in their opinion, the outside value was $4,000, out of which it would be necessary to pay them their regular commission. Defendant's husband in reply wrote plaintiffs that defendant would sell for that price less 5%. Plaintiffs, in response, stated that they would keep in mind defendant's desire to sell the property, and later wrote in response to an inquiry as to the prospects of the sale, that the best offer they had been able to secure was $3,000 above the commission, but that they did not submit this proposition, as they did not know whether it would interest defendant, but that if it would interest her, they would be pleased to hear from her. Defendant's husband replied that defendant would sell for $3,500 less commission, to which plaintiffs replied that they would do their best to interest a purchaser, and later wrote that they had an offer which would net defendant $3,000. Defendant's husband replied that defendant would accept this offer, and a deed was later forwarded to her for execution, naming one of the plaintiffs as the grantee, and enclosing a check to her for $500, with instructions to forward deed to a bank with sight draft for $2,500, whereupon defendant repudiated the sale on the ground that she had not sold the property or directed it to be sold to said grantee or to plaintiffs' firm, and that they were without authority to sell it to themselves. **Held,** that the correspondence shows that defendant relied upon plaintiffs to sell for her for the highest and the best obtainable price for the property, and that they were her agents for the property, that therefore, plaintiffs could not become the purchasers without defendant's knowledge and consent, and that upon discovering that they were the proposed purchasers, she had a right to repudiate the sale.

Appeal from Circuit Court, Lawrence County. Hon. JAMES MCNENNY, Judge.

Action by James W. Curran and another, co-partners as Curran & Curran, against Christina Kent, to compel specific performance of a contract for the sale of realty. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Reversed and remanded.

*John R. Russell,* for Appellant.

*Kellar & Stanley,* for Respondent.

Appellant cited: Durand v. Preston, 128 N. W. 129; Porter v. Woodruff, 36 N. J. Eq. 174--9; Anderson v. Bank, 64 N. W. 114 (N. D.) and cases; Anderson v. Bank, 172 U. S. 573; 31 Cyc. 1437; 19 Cyc. 206, note 72; Merriam v. Johnson, 90

N. W. 116 (Minn.); 22 Am. & Eng. Ann. Cases, at pages 1172-4.

Respondents submitted that: Where the owner of property fixes a "net" price upon his property, the relationship of principal and agent does not exist, and cited: Law v. Ware, 87 N. E. 308 (Ill.) Wolverton v. Tuttle, 94 Pac. 961 (Ore.); Synnott v. Shaughnessy, 130 U. S. 572, 32 Law Ed. 1038.

McCOY, P. J. This action was instituted to compel the specific performance of a contract in relation to the sale of real estate. Plaintiffs alleged that on about the 24th day of June, 1914, defendant promised and agreed to sell and convey to plaintiffs a certain lot on Mill street in the city of Lead, for the net sum of $3,000, and promised and agreed to make, execute, and deliver a good and sufficient deed conveying said property to plaintiffs; that plaintiffs relied upon said agreement and forwarded a deed to defendant for signature together with the sum of $500, and requested defendant to return said deed with sight draft for the balance of said purchase price; that plaintiffs stand able, ready, and willing to abide by the terms of said agreement; that defendant undertook to rescind said sale and now refuses to abide by said agreement, or deliver said deed as agreed. Defendant made answer denying generally the allegation of plaintiffs except as admitted. Defendant admitted that plaintiffs forwarded a deed to her for signature and enclosed $500, and requested that said deed be returned, executed with a sight draft for $2,500, and that she declined to execute said deed or accept said draft, and promptly returned both to plaintiffs, and as a defense alleged that plaintiffs, were the agents and brokers of defendant for the sale of the property described in the complaint, and bound by the highest degree of good faith to procure for this defendant the highest market price for said property; but that notwithstanding said fact and in fraud of defendant's rights, and without the knowledge and consent of defendant, said plaintiffs sought to become the purchasers of said property themselves, and for less than the market price then obtainable; and, upon learning of said facts, defendant immediately repudiated the same, terminated said agency, and withdrew the property from sale by plaintiffs. There was a trial of the issues, and findings and judgment

in favor of plaintiffs, and defendant appeals, assigning, among other things, the insufficiency of the evidence to justify the findings and judgment.

The transaction involved took place as the result of certain written correspondence between plaintiff and the husband of defendant. The plaintiffs are engaged in real estate, loan, insurance, and rental business in Lead, S. D.; and the defendant and her husband reside at Albuquerque, N. M. On January 13, 1914, plaintiffs wrote defendant:

"We have a party who is looking for a location for a restaurant and will rent your property on Mill street at $50 a month, when the present tenant, who occupies same as a shooting gallery moves out, which will be before long. We also have a party who might be interested in the purchase of your property and bank stock, if you care to quote a price."

On January 17, 1914, defendant's husband replied as follows:

"Replying to your of the 13th inst. would say we would be glad to sell the Mill street property if we could get a reasonable price for it. What do you think we can get for it? Mrs. Kent wishes to say she does not desire to sell the bank stock. Would thank you for your opinion as to the value of the property."

On January 20, 1914, plaintiffs again wrote as follows:

"You ask us for our opinion as to the value of the property. Considering the present condition of real estate here, and particularly the fact that the outlook for Mill street property is quiet, we can say that in our opinion, the outside value of your property at the present time is $4,000, out of which, in event of sale, it would be necessary for you to pay us our regular commission. Should you care to list the property at that figure with us, we would be glad to see if we cannot find a purchaser."

On January 29, 1914, defendant's husband wrote as follows:

"Referring to yours of the 20th inst., would say Mrs. Kent will take $4,000, less 5 per cent. for the Mill street property. Would say also that she would be willing to lease the property at $50 per month providing you think she could do no better. Have been renting for $75 a month, but the class of tenants has

not been very satisfactory. She would prefer to sell the property."

On February 2, 1914, plaintiffs replied as follows:

"We have your favor of January 29. * * * We thank you for your kind answer and will keep in mind the fact that you are desirous of selling the property."

On May 6, 1914, Mr. Kent again wrote concerning the property in question:

"Is there any prospect of selling the Mill street proptrty?"

On May 8, 1914, plaintiffs replied:

"Note that you ask as to prospects of sale of Mill street property. The best offer we have been able to secure on sale, is $3,000, which would be less our regular commission of 5 per cent. Did not submit same to you as we did not know whether or not this would interest you. However, we believe our party would still consider the property at that price. Mill street property does not look as good as it did a few years ago and people—locally—are steering shy of same. If you are at all interested in the offer, would be pleased to hear from you."

On May 16th, Mr. Kent wrote:

"Yours of the 8th received, and in reply would say Mrs. Kent would sell the Mill street property for $3,500, less commissions. Hope you can find a purchaser at that price."

On May 18th plaintiffs wrote:

"We have your of the 16th inst., and notice your price on the Mill street property. Will do our best to interest a purchaser."

On June 20th, plaintiffs again wrote as follows:

"We have an offer on your property which will net you $3,000, property to be free and clear, with abstract showing good title, furnished by you. We will be pleased to hear from you in reply regarding same, as soon as possible."

On June 24th, Mr. Kent replied:

"Referring to yours of the 20th inst., would say Mrs. Kent desires me to say that she will take $3,000 net for the Mill street property, purchaser to pay all expenses of the sale. In view of the fact that you think this property ought to be worth $4,000 we think the party can well afford to do so. In fact, we had a

similar offer a short time ago, but decided not to sell at that time."

On June 27th, plaintiffs replied:

"We have your favor of the 24th accepting offer of $3,000 net for Mill street property, title to be free and clear. Kindly forward us abstract of the property and we will prepare the necessary papers and forward you for your signature."

On July 3, Mr. Kent wrote:

"I do not find that Mr. McKenzie ever had an abstract of the Mill street property. He has quitclaim deed from townsite of Lead City to George Hearst, quitclaim deed from Phœbe Hearst to Alexander McKenzie, and a quitclaim deed from Ernest May and Peter A. Gushurst to Alexander McKenzie. Make a quitclaim deed and forward and Mrs. Kent will execute the same, as stated for the price of three thousand ($3,000) dollars net to her. If you desire these deeds, let me know and we will forward them to you."

On July 6th, plaintiff wrote:

"We have your favor of July 3. Inclosed find deed, which kindly have Mrs. Kent sign and acknowledge. We are also inclosing her check for $500 in her favor. Kindly forward deed duly signed to the First National Bank of Lead, with sight draft attached for $2,500."

On July 6th, Mr. Kent telegraphed plaintiffs:

"Have an offer of $3,250 net for Mill street property. Can you sell for that price? If not withdraw it from sale. Answer."

On July 6th, plaintiffs wired Mr. Kent:

"You have accepted our offer in yours of June 24th. Have received yours of July 3d. Will insist that sale be made us on our offer. Deed and check forwarded today."

On July 11th defendant gave plaintiffs the following notice:

"Gentlemen: I am herewith returning to you check * * * for $500, and also proposed unsigned quitclaim deed from the undersigned, Christina Kent, to James W. Curran of [described property]. Said proposed deed purporting to be dated July 6, 1914. The return of the enclosed described is made upon the grounds, among others, that the undersigned, Christina Kent, has not sold or directed to be sold the foregoing described property to said James W. Curran, or to James W. Curran and

James L. Curran, as copartners under the firm name and style of Curran & Curran. And you, the said James W. Curran and James L. Curran, as such copartners, were without power or authority to sell said property to yourselves or to either one of said firm. You, the said firm of James W. Curran and James L. Curran, as copartners as aforesaid, having no other or further authority in the premises than to find a purchaser for such property other than yourselves or either of you, for the best consideration that could be obtained for such property, after submitting such proposition to purchase to the undersigned, Christina Kent. And the undersigned, Christina Kent, is not bound and will not be bound by your illegal act in attempting to make a sale of said property to yourselves or to one of said firm. And the undersigned, Christina Kent, refuses the request to make a deed of. said property to said James W. Curran, one of the members of said copartnership. And your entire acts in the premises are hereby repudiated.

"[Signed] Christina. Kent."

We are of the view that it clearly appears from this correspondence that appellant was relying upon respondents to secure for her the highest and best obtainable price for her property. She made inquiries of respondents as to its value and they informed her as to the general value of Mill street property and of this property in particular. Respondents were her agents for the purpose of securing for her the best obtainable price. Appellant, in the first instance, made respondents her agents to sell this land for the best obtainable price on commission. She was induced, at the suggestion of respondents, to accept an offer purporting to come from a third party at an amount of $3,000 net, also suggested by them. Under the circumstances of this case respondents could not become the purchasers of said property without the knowledge and consent of appellant; and upon discovering that respondents themselves were the proposed purchasers appellant had the right to repudiate the sale. The rule announced in Durand v. Preston, 26 S. D. 222, 128 N. W. 129, and in Sawyer v. Issenhuth, 31 S. D. 502, 141 N. W. 378, must govern in this case. The case of Merriam v. Johnson, 86 Minn. 61, 90 N. W. 116, is directly in point. Hence we are of the

view that the evidence was insufficient to justify or sustain the findings and judgment.

The judgment and order appealed from are reversed, and the cause remanded for further proceedings consistent with the views herein expressed.