## Slusher v. Moore.

(Decided February 12, 1924.)

### Appeal from Whitley Circuit Court

1. Corporations—Manager and Stockholder Could Make Brokerage Contract Binding on Himself.—Manager and stockholder of a corporation could make a contract to sell its property, which would bind him for commissions, even though not binding on the company.

2. Brokers—May Not Represent Both Parties.—Where a broker is paid a commission on the sale price, or is authorized to sell at a "minimum price" or at the "best price obtainable," good faith and fidelity forbid him from representing the buyer also or from otherwise acting in a dual capacity, unless he makes a full disclosure to both principals and acts with their approval.

3. Brokers—Seller Repudiating Contract Cannot Complain Name of Purchaser Not Given.—If seller repudiated contract to pay commission for procuring purchaser without asking the name of the purchaser, he cannot complain that broker did not tell him the name of the purchaser; it appearing that the broker tendered the sum fixed in the contract.

4. Brokers—Not Necessary that Purchaser and Seller Literally Meet. —In order for broker to earn commission for furnishing purchaser, it is not necessary for the purchaser and seller to literally

meet face to face, but negotiations may be consummated by correspondence, telephone conversation, or telephone message.

5. Brokers—Broker Must Procure Purchaser Ready, Able, and Willing to Pay Consideration Fixed.—To earn compensation, a broker must procure a purchaser who is ready, able, and willing to pay the consideration fixed.

6. Brokers—Seller Cannot Repudiate Without Inquiring as to Price. —Where net price to the seller is fixed, and it is agreed for the broker to sell at a higher figure and receive the excess as compensation, to hold the seller liable for commissions he is entitled to know the sale price of the property, and it is the duty of the broker in reporting the sale to give him this information, so that he may know the extent of his obligation, but the fact of sale will naturally raise the presumption that the property has been sold at a higher price than that fixed by the seller, and put him on inquiry as to the amount the broker is claiming in the premises, and for the seller to repudiate the contract without further inquiry, or giving to the broker an opportunity of stating the sale price, is a distinct waiver of his right to such information.

7. Brokers—Cannot Recover Commission on Sale to Himself.—Where net price to seller was fixed, and broker was to receive excess as compensation, he was not entitled to any commission for procuring a purchaser, where he and another were to join in purchasing the property, even though he and such other bore the relationship of partners in the transaction.

8. Brokers—Contract by Broker to Purchase for Son Bound Only Himself.—Where broker, employed to sell property at price net to seller, entered into agreement with third party whereby the purchase was to be made by the broker and such third party for the benefit of such third party and the broker's son, the broker bound himself alone and not his son, where the latter knew nothing of the negotiations and was not consulted, and the broker could not recover commissions on his own purchase.

9. Frauds, Statute of—Parol Contract for Sale of Real Estate Unenforceable.—A parol contract for the sale of real estate is unenforceable, and no recovery can be had for refusal to convey.

10. Vendor and Purchaser—Measure of Damages for Breach of Contract to Convey.—Even if a broker, employed to sell at a fixed price net to the seller, had an enforceable contract by the seller to convey to him, he could not recover commissions as a measure of damages for failure to convey to him, as the measure of damages would be the difference between the contract price and the actual value of the property.

R. L. POPE, H. K. TRAMMEL and H. C. GILLIS for appellant.

STEPHENS & STEELY and TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Evans Coal Company owned a lease upon a mine in Whitley county and was engaged in its operation. Its manager, J. L. Slusher, who also owned one-third of its capital stock, resided at Jellico, Tenn. W. L. Moore was a prosperous real estate broker living at Williamsburg, Ky. On the morning of October 18, 1917, without any previous arrangement, these gentlemen had a conversation at the railroad station at Williamsburg in which they agreed that Moore might sell the property of that company so as to secure for it the sum of $10,000.00, and for his services in procuring a purchaser he was to receive all of the sale price in excess of that sum.

According to Moore he at once sought a purchaser and in the month of November made arrangements with J. C. Bird by which it was agreed for the property to be purchased at the price of $12,500.00; that Bird was to take 55% of the stock at that price; this arrangement being predicated on Moore's promise to furnish Bird such money as he needed to make his payment and upon Moore's further assurance that he would place the other 45% of the stock. It was also agreed that Moore was to have the position of weigher, which at that time paid 15 cents a ton. Moore did not tell Bird the name of the party with whom he placed the other 45% of the stock. In this regard he says that he was general agent for his son, who was then in the United States Army, stationed in France; that he had recently sold a tract of land for his son and at that time had on hand funds belonging to the latter amounting to as much as $6,000.00, and that as such agent he was going to take the other 45% for his son. Bird visited the mine and had it inspected by a competent engineer, and when the above agreement was reached Moore says that he telephoned Slusher that he had $10,000.00 to pay him for the company's property and that Slusher told him that he would not sell it. Moore could have paid the full consideration in cash at that time.

A few days later the company sold its property to a new company, of which Bird was a member, for the sum of $12,000.00, and Moore filed suit against Slusher for the sum of $2,500.00 commissions, this being the difference between the alleged sale price and the price fixed by Slusher.

Slusher admits the original agreement, but says that shortly afterward the government authorized an increase of 45c a ton in the price of coal at the mine, and that on the 28th day of October, 1917, he telephoned Moore and asked him if he had sold the property and that Moore told him that he had not. He then asked him if he had anyone bidding on it and Moore said "no;" that he told Moore that owing to the advanced price of coal the mine was worth more money, and that he would withdraw the proposition and handle it himself; that the latter part of November some parties named Crolley agreed with him to take the mine at the price of $12,000.00 provided they could procure the money; that Moore and another party called him over the telephone that night and told him that they had heard the Crolleys had "cold feet" and that they had a party they thought would buy it, asking him if he would pay them $250.00 commission, which he declined; they also asked him if he would sell it for $11,000.00 and he declined; that the Crolleys returned and completed the deal and requested him to issue some of the stock to Bird, which he did.

Moore denies the telephone conversation of October 28th, but admits a telephone conversation with Slusher after the latter had repudiated the contract with him, though he does not remember the details of it.

The respective contentions were fully set out in the pleadings and the above facts were proven in the trial, and elaborate instructions given. The jury returned a verdict for plaintiff for $2,500.00.

Numerous grounds are relied upon for reversal, to some of which we will later refer specifically. Slusher could make a contract to sell the property which would bind him for commissions even though not binding upon the company. McDowell v. Lewis, 200 Ky. 126; Pope v. Caddell, 125 Ky. 837; Mueller v. Nugent, 187 Ky. 61; 4 R. C. L., page 307.

It is elementary that where a broker is paid a commission on the sale price, or is authorized to sell at a "minimum price" or at the "best price obtainable," good faith and fidelity forbid him from representing the buyer also, or from otherwise acting in a dual capacity unless he makes a full disclosure to both principals and acts with their approval. 4 R. C. L. 274, sec. 23, page 276; Johnson v. Mitchell, &c., 192 Ky. 444; Meecham on Agency, sec. 798; Paul v. Prince, 228 S. W. 1102; Baird v. Ryan, 17 Ky. Law Rep. 1417; Tenmen v. Sayre & Co.,

8 K. L. R. 421; Donnelly v. Cunningham, 58 Minn. 376; Tukesberry v. Spruence, 75 Ill. 187; Herminger v. Heald, 29 Atl. 190.

In this respect this transaction may be distinguished from those above mentioned. Here the net price to the seller was fixed and it was expressly agreed for the broker to sell at a higher figure and receive the excess as compensation and in this excess the seller had no interest; indeed, except as affecting his commissions, no reason appears why under this contract the broker himself might not become the purchaser in whole or in part of the property. There is nothing in the contract that requires the name of the purchaser to be given the seller except perhaps for the purpose of enabling the latter to determine the ability of the purchaser to pay, and if payment is tendered by the broker for the sum fixed in the contract such action might be considered a compliance with the contract. 4 R. C. L. 277; Merrian v. Johnson, 86 Minn. 61, 90 N. W. 116. At any rate, if the seller repudiated the contract without asking the name of the purchaser he cannot complain of this. It is not necessary for the purchaser and seller to literally meet face to face, but such negotiations can be consummated by correspondence, telephone conversation or telegraph message. Hartig v. Schrader, 190 Ky. 511. Of course, always subject to the rule that the broker must *procure* a purchaser who is ready, able and willing to pay the consideration fixed. In a case like this in order to hold the seller liable for the commissions he is entitled to know the sale price of the property, and we think it the duty of the broker in reporting the sale to give him this information so that he may know the extent of his obligation, and if such information is withheld from the seller by the broker it is questionable whether the latter could recover any commission for the breach of contract. But the fact of sale would naturally raise the presumption that the property had been sold at a higher price than that fixed by the seller, and put the latter on inquiry as to the amount the broker was claiming in the premises: and for the seller to repudiate the contract upon being informed of the sale, without further inquiry or giving to the broker an opportunity of stating the sale price, would be a distinct waiver of his right to such information, and under such circumstances the seller could not rely as a defense upon the broker's failure to impart such information.

In the above respects Moore seems to have acted within his rights, but a more serious question arises as to whether or not he did procure a purchaser for this property or negotiate such a sale as would entitle him to a commission. At the time he notified Slusher of the contract of purchase Bird had not paid him anything; no company had been organized and the negotiations had proceeded no further than a mere promise upon Bird's part to take 55% of the stock upon condition that Moore would furnish the greater part of the money to pay for it and place the remainder of the stock. So that it appears that he was attempting to represent an unorganized company, in which Bird, with money to be furnished largely by him, was to take 55% of the stock; and in which he was to take 45% in the name of his absent son, which would be equivalent to purchasing the property himself with the intention of disposing of it in the manner above indicated.

Young Moore did not participate, was not consulted, was not even known in the negotiations and in view of the relations existing his father could not profit at his expense, and under such circumstances any agreement made by W. L. Moore bound him alone, and even if the agreement between him and Bird created a partnership for the purchase of the property it constituted those two as the members of such partnership, and for Moore to claim a purchase for a firm of which he was a member is in all respects equivalent to a purchase for himself.

As we have suggested above, so far as the seller was concerned there was no reason why Moore could not have purchased the property himself, either in whole or in part, but his contract was to find a purchaser and he could not recover commission on his own purchase. True, as a purchaser he might suffer if the property was worth more than $10,000.00, but as a parol contract for the sale of real estate is unenforceable, he could not recover for a refusal to convey. Even if he had an enforceable contract *commissions* could not be recovered by him as the measure of damages in a suit of that character would be the difference between the contract price and the actual value of the property.

A number of most interesting questions have been raised, which we think it unnecessary to decide and which are expressly reserved, but for the reasons given we think a peremptory instruction should have been given

for the defendant, and upon another trial, if the evidence is substantially the same, this will be done.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court, except Chief Justice Sampson, sitting.