JOSEPH A. HOUSTON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

December 10, 1909.

Nos. 16,428—(175).

**Mistake — Ignorance of Law.**

The maxim, Ignorantia juris non excusat, has no application when, under a mutual mistake and misapprehension, one party purchases from another property which the purchaser already owns.

**Entry on Indemnity Land Before Segregation from Public Domain.**

Appellant, claiming title under a land grant, and respondent, under his homestead entry, conducted a contest through the United States general land office, and the case was finally decided in favor of appellant. *Held*, Northern Pacific Ry. Co. v. Wass, 104 Minn. 411, followed, which was to the effect that the lands in question had not been segregated from the public domain at the time respondent made settlement, and that he was the equitable owner of the land.

<pre>[1] Reported in 123 N. W. 922.
    109 M.—18</pre>

### Cancellation of Contract to Purchase Homestead.

> Respondent is entitled to equitable relief to secure the cancellation of a contract for the purchase of his homestead from appellant; the parties acting under the misapprehension that the decision rendered in the contest before the government land office was final and decisive of their rights.

Action in the district court for Morrison county to cancel a certain deed from defendant to plaintiff, to declare that defendant was trustee of the legal title to the land described for the use and benefit of plaintiff, and that defendant be decreed to convey the legal title to plaintiff, without reservation, exception or easement, and to recover $1,074.40. The complaint in substance alleged the facts stated in the opinion and that plaintiff had demanded a rescission of the agreement and a return of the money paid. The answer, inter alia, alleged that the plaintiff entered into the agreement as a compromise and settlement of the dispute between the parties over the land described, with full knowledge of the facts upon which defendant claimed ownership. The case was tried before Taylor, J., who made findings and ordered judgment in favor of plaintiff. From the judgment entered pursuant thereto, defendant appealed. Affirmed.

*Charles W. Bunn* and *Charles A. Hart,* for appellant.

If, as plaintiff contends, his right under the homestead law was superior to that of the railway company under its indemnity selection, no one on either side of the transaction knew of it, or could know of it, until long after the agreement was made, when the question was brought before the courts, and that interpretation given the law. All of the facts were known to both of the parties. Each had counsel and equal means of ascertaining and determining for himself what the law was, or would be declared to be, applicable to those facts.

It has never been disputed that a settlement of claims in litigation, or which have such apparent validity as to furnish grounds for litigation, is binding; and that a subsequent judicial interpretation to the effect that the settled claim could not have been successfully asserted cannot affect the validity of the settlement. Lyon v. Richmond, 2 Johns. Ch. 51, 60; Union Bank v. Geary, 5 Pet. 98. See Hall v. Wheeler, 37 Minn. 522; Perkins v. Trinka, 30 Minn. 241.

*F. B. Gorman,* for respondent.

A duly qualified homestead claimant, who settles upon land within the indemnity limits of a railroad land-grant and in the proper land office makes and files a legal application to enter his claim under the homestead laws of the United States, before the company's application to select the same has been approved by the secretary of the interior, has acquired an interest and a right in and to said land that is prior and superior to that of the railroad company, that segregates, removes and excludes it from the class of lands that may be approved, as lieu land, by the secretary of the interior, and that makes it the plain duty of the said secretary to deny, overrule and reject the company's application therefor; and to allow, approve, and place of record the settler's claim for the same. Northern Pacific Ry. Co. v. Wass, 104 Minn. 411; Sjoli v. Dreschel, 199 U. S. 564; Humbird v. Avery, 195 U. S. 480; Kansas Pacific R. Co. v. Atchison, T. & S. F. R. Co., 112 U. S. 414; U. S. v. Missouri, K. & T. Ry. Co., 141 U. S. 358; St. Paul & Sioux City R. Co. v. Winona & St. Peter R. Co., 112 U. S. 720; Oregon & California R. Co. v. U. S., 189 U. S. 103; Cedar Rapids & M. R. Co. v. Herring, 110 U. S. 27; Sioux City & St. P. R. Co. v. Chicago, M. & St. P. Ry. Co., 117 U. S. 406; Nelson v. Northern Pacific Ry. Co., 188 U. S. 109; U. S. v. Oregon & C. R. Co., 176 U. S. 28; St. Paul R. Co. v. Bell, 183 U S. 689; Barney v. Winona & St. Peter R. Co., 117 U. S. 228.

Within the indemnity limits the odd numbered sections were not granted to the railroad company by congress. All that congress ever did directly in regard to lands within the indemnity limits, was to say, in substance, that if any tracts of land in the place limits of the grant were lost to the company by reason of sale, grant, appropriation or other disposition by congress, or by reason of the attachment of pre-emption or homestead rights, in that case a like quantity of other lands belonging to the United States, situate nearest to the tracts lost, might be selected as indemnity therefor. It is not, therefore, by the act of congress that a right attaches to indemnity land, in favor of the railroad company, but by the power delegated to the secretary of the interior.

No losses in place limits, as a basis for those lands taken in the

indemnity limits, were embraced in the lists filed in the year 1877, or in those filed in 1889, so that each of these two lists was fatally defective when filed in the secretary's office, and neither of them could have been approved, even if no adverse claim had attached to the land pending the approval. It is no answer to this to say that at the time of filing these lists the practice of the land department did not require the specification of losses as a basis of selection, because the granting act itself, approved in the year 1857, required the specification of loss as a prerequisite to the right of selection, and the land department had no authority to suspend any of the provisions of the granting act. Wisconsin Central R. Co. v. Price County, 133 U. S. 496.

Can a railway company sell a man his own land, convert the purchase money to their own use and retain it with the approval of a court of equity, when it is clear that he is ignorant of his own antecedent right and title therein? Story, Eq. Jur. § 122; Pomeroy, Eq. Jur. § 849; Stedwell v. Anderson, 21 Conn. 139; Bruner v. Town, 102 Ky. 459; Lawrence v. Beaubien, 2 Bailey, 623; Wheeler v. Smith, 9 How. 55; Trigg v. Read, 5 Humph. 529; Bingham v. Bingham, 1 Ves. Sr. 126 (1748).

Public land settled upon, improved, applied for and claimed as a homestead is segregated from the public domain and is not subject to selection or approval, as lieu land, under the indemnity provisions of this land grant. Wisconsin Central R. Co. v. Price County, supra; Sjoli v. Dreschel, 199 U. S. 564; Brandon v. Ard, 211 U. S. 11; Northern Pacific Ry. Co. v. Wass, 104 Minn. 411.

The act of congress approved March 3, 1857, amended and supplemented by acts approved March 3, 1865, and March 3, 1871, under which the land in controversy is claimed by the company, applies only to special localities, and does not apply generally throughout all parts of the United States. It does not apply generally in and to all parts of Minnesota, but only along certain lines and between certain designated points in said state. Courts treat mistakes of special statutes as a mistake of fact. State v. Paup, 13 Ark. 129; Cooper v. Phibbs, 2 L. R. Eng. & Irish App. Cas. 149 (1867); Earl Beauchamp v. Winn, 6 L. R. Eng. & Irish App. Cas. 223 (1873).

Equity will grant relief, either affirmative or defensive, to a party

who in ignorance or by mistake of his own antecedent existing private rights enters into an agreement whereby such private rights and interests are sacrificed. Northrop v. Graves, 19 Conn. 548; Mansfield v. Lynch, 59 Conn. 320; Stedwell v. Anderson, supra; Kane v. Morehouse, 46 Conn. 300; Hopkins v. Mazyck, 1 Hill Eq. 242; Culbreath v. Culbreath, 7 Ga. 64; Fane v. Fane, L. R. 20 Eq. 698; Gee v. Spencer, 1 Vern. 32; Mildmay v. Hungerford, 2 Vern. 243; Willan v. Willan, 16 Ves. Jr. 72; Jordan v. Stevens, 51 Me. 78; Spurr v. Benedict, 99 Mass. 463; Champlin v. Laytin, 18 Wend. 407; Rider v. Powell, 28 N. Y. 310; Green v. Morris, 12 N. J. Eq. 165; Whelen's Appeal, 70 Pa. St. 410.

LEWIS, J.

The real estate involved in this action was situated in Morrison county, within the indemnity limits of the grant made by the United States to the territory of Minnesota March 3, 1857 (11 St. 195), for the purpose of aiding the construction of certain railroads, and also within the indemnity limits of the grant made to the state of Minnesota for the same purpose by act of congress March 3, 1865 (13 St. 526, c. 105), as amended by act of March 3, 1871 (16 St. 588, c. 144). The interest of the state was conferred upon the Western Railroad Company of Minnesota by act of the state legislature on March 1, 1877 (Sp. Laws 1877, p. 257, c. 201). On December 31, 1877, the Western Railroad Company filed in the United States land office at St. Cloud a list of lands, including those in question, which it selected as indemnity lands under the grant. In 1889 the St. Paul & Northern Pacific Railroad Company, successor in interest to the Western Railroad Company, filed in the same land office an amended selection list of indemnity lands, including the lands here involved.

These selections had not been acted upon by the secretary of the interior when, in 1900, respondent, being duly qualified, and the lands in question being then vacant, made settlement thereon with the bona fide intention of entering the same under the homestead laws. Respondent has ever since maintained possession of and resided on the land and improved the same to the extent of $1,800. In 1902 re-

spondent applied to the register and receiver of the United States land district of St. Cloud for leave to make entry; but his application was rejected upon the ground that the lands were then embraced in a then pending, though unapproved, indemnity selection by the Northern Pacific Railway Company. He appealed to the commissioner of the general land office, who affirmed the ruling of the local officers, and he appealed to the secretary of the interior, who, in 1904, affirmed the decision of the commissioner. In 1905 the secretary of the interior approved the indemnity selection by the St. Paul and Northern Pacific Railroad Company, and thereupon the patent of the United States government was issued to the company, and the title conveyed by this patent was transferred to appellant as the successor in interest.

About a year after the ultimate rejection of respondent's application, and after the vesting of title in appellant, negotiations were opened between it and respondent. Appellant, asserting its title, offered to sell those lands, together with two adjoining lots which formed a natural part of the tract, for $5 per acre. A contract was entered into, and respondent undertook to pay $5 an acre for the land, exclusive of minerals. This agreement was subsequently consummated, and respondent paid the purchase price and received a deed to the premises, exclusive of minerals. This action was brought for the purpose of rescinding and canceling the deed, and to recover the sum of money paid as purchase price for the premises, and for the purpose of securing the judgment of the court that the equitable title be declared to be in respondent, and that the railway company be declared the trustee of the legal title, and be required to convey the same to respondent.

The complaint asserts that the secretary's approval of the railroad company's selection was without authority and void; that he had no discretion, but was legally bound to approve the homestead application of respondent; and that respondent's action in subsequently entering into an agreement to purchase was the result of a mistake of fact on his part, and of fraudulent misrepresentations and intimidating threats made to him by appellant and its agents. The allegations of the complaint were put in issue by the answer, and it was alleged that

the agreement of purchase was a compromise and settlement of a dispute between the parties over the lands in controversy. The trial court found that the allegations of the complaint were sustained by the evidence, "except that the agents and employees of the defendant, who on behalf of the defendant conducted the negotiations set forth in the complaint, believed that the statements made by them were true, and none of such statements were made for the purpose of misleading, deceiving, or defrauding the plaintiff."

Northern Pacific Ry. Co. v. Wass, 104 Minn. 411, 116 N. W. 937, is decisive of the first question argued. The lands had not been segregated from the public domain at the time respondent made settlement, for the reason that the lists of selection had not been approved by the secretary of the interior. This leaves for consideration the question whether the evidence sustains the finding of the court that respondent purchased the land under a mistake of fact and as a result of duress.

During all the time the contest was in progress in the general land office and before the secretary of the interior, and until the issuing of the patent to the railroad company, respondent undoubtedly believed, and had every reason for doing so, that he was entitled to the land by virtue of his settlement and application as a homesteader, and that the final decision would be in his favor. Those who take advantage of such opportunities to acquire a home are not generally well posted as to rules of law governing titles to public lands, and there is nothing in the record to indicate that respondent possessed any knowledge upon the subject, save that which came to him through his experience in connection with his contest. He had settled on the land and made it his permanent home, improving the property to the extent of $1,800, and was still in possession when he was notified by the company that the land was for sale, in connection with two contiguous lots, minerals reserved, and that he must make up his mind within thirty days to either purchase or remove his improvements, or the land would be sold to other parties. Under such circumstances it would have been quite natural for respondent to accept the statements of the railway company that they had absolute title, and that there was nothing more he could do to assert his claim; and being confronted

with the threat of having the land sold from under him, and being face to face with the probability of losing the benefits of all his improvements, he would naturally endeavor to protect himself as best he could. The two conditions which the company required of him as a purchaser were to buy two additional lots adjoining the homestead, and the reservation by the company of the mineral rights. The court found from this evidence that respondent was under pressure and did not freely and voluntarily enter into the contract. We are of opinion that the evidence sustains the finding.

· · The court also found that respondent entered into the contract under a mistake of facts, viz., that he assumed from the representations made to him that the final step had been reached in the determination of his title and in assuming that the railway company had acquired absolute title in fee. There is no evidence to indicate that the agreement of purchase was a compromise. Respondent unquestionably believed that he possessed no title. He was ignorant of his own rights in the premises, and one of the important questions is: Does such mistake or misapprehension as to the nature of his title afford him any ground for equitable relief?

A mistake of law may be the result of ignorance, or error, with respect to some general rules of the municipal law applicable to all persons, which regulate human conduct, determine rights of property, of contract, and the like, or "the term may mean the ignorance or error of a particular person with respect to his own legal rights and interests which are affected by or which result from a certain transaction in which he engages." 2 Pomeroy, Eq. Jur. (3d Ed.) § 841 A mistake of law is not adequate ground for relief where a party, with knowledge of all the material facts and in the absence of equitable circumstances, for a valuable consideration enters into a transaction affecting his interests, rights, and liability, under ignorance or error with respect to the rules of law controlling the case. Perkins v. Trinka, 30 Minn. 241, 15 N. W. 115, is an illustration of the doctrine where the rights of the parties were doubtful. Each had equal means of ascertaining what those rights were, and got together and settled the dispute. Such an agreement must be sustained, when freely made, although a judicial decision was rendered afterwards

showing that their rights were different from what the parties sup-
posed them to be. So in Hall v. Wheeler, 37 Minn. 522, 35 N. W.
377, which arose from a dispute over the title to land. One party held
a tax title, and another the fee title. They settled their dispute, and
the court upheld the contract, although a subsequent judicial decision
showed their rights to have been different from what one of them sup-
posed.

In the case under consideration the court found that the statements
and representations made by the agents and representatives of appel-
lant company regarding the title were believed by such parties to be
true, and that they were not made for the purpose of misleading,
deceiving, or defrauding respondent. There was no evidence that the
parties compromised and settled their claims as to the title to the land.
It is clear that both the company and respondent assumed that the
decision of the secretary of the interior was final and that the title
vested in the company. As we view the question, it is not necessary to
determine whether the mistake made be called a mistake of law, or
one of fact. The English courts class misunderstandings of this
character as mistakes of fact. The striking feature of the case is that
appellant succeeded in selling respondent land of which he was al-
ready the equitable owner, and which he did not have to purchase,
and unless it appears clearly that respondent voluntarily entered into
the contract, with full knowledge of all the material facts, he is not
estopped by his conduct from repudiating the contract and insisting
upon being restored to his own.

Some of the authorities, in dealing with this subject, place the
right to repudiate a contract of this kind upon the ground that there
was a failure of consideration; but, to whatever source the technical
legal right to rescind may be traced, the reason why courts of equity
respond in such cases is that the demand for relief is based upon
manifest justice. In an examination of the authorities we will con-
fine ourselves to those cases where the mistake was with reference to
title, or interest in property.

The earliest English case is that of Lansdowne v. Lansdowne (de-
cided in 1729) 2 J. & W. 205. Certain heirs divided real estate ac-
cording to their supposed rights, as advised by a third party. Suit

was afterwards brought by one of them to set aside the conveyances upon the ground of mistake, and the court set the same aside upon the ground of mistake and misrepresentation of the law. Then comes the case of Bingham v. Bingham, 1 Ves. Sr. 126 (1748), where an agreement had been made for the sale of an estate, and a bill was brought by the bidder to have the purchase money refunded upon the ground that he was already the owner of the estate. The defense was that it was the plaintiffs' own fault, that the title was produced to them, and they had time to consider it; but the court held there was a plain mistake, such as the court was warranted to relieve, and not suffer the defendant to take money in consideration for the sale of an estate to which he had no right. In Cooper v. Phibbs, 2 L. R. Eng. & Irish App. Cas. 149 (1867), the parties had made a mutual mistake with reference to title, and it was held that they were entitled to relief. The opinion of Lord Westbury in this case has often been referred to as stating the proper rules applicable to cases of this character. The maxim, "Ignorantia juris haud excusat," has no application where the parties contract under a mutual mistake and misapprehension as to their relative and respective rights. See, also, Earl Beauchamp v. Winn, 6 L. R. Eng. & Irish App. Cas. 223 (1873). In Jones v. Clifford, 3 L. R. Ch. Div. 779 (1876), the court passed upon a similar question, and, reviewing Bingham v. Bingham and Cooper v. Phibbs, supra, approved of the doctrine, and held that, the parties having dealt with each other upon a mistake of law as to the title, they had a right to have the same rectified in a court of equity. Again, in 1895, in Huddersfield Banking Company, Limited, v. Lister & Son, Limited, 2 L. R. Ch. Div. 273, the court referred to and approved of the doctrine of the preceding cases, and held that a mortgagee was entitled to have a release set aside which it had made under a misapprehension of the law.

In our own country there has been a wide diversity of opinion as to the exceptions to the general rule that there is no relief against a mistake of law; but the particular question involved in this case; where a party purchases from another property which he already owns, has not often been presented to the courts. In Blakeman v. Blakeman, 39 Conn. 320, the court applied the English rule in a case

where the right of way through certain land had become extinguished by the purchase of the servient estate by the owner of the dominant estate, who afterwards sold the dominant estate, and conveyed it by warranty deed which granted the land with its privileges and appurtenances, but did not in express terms grant the right of way. Both parties were ignorant of the legal principle under which the right of way had become extinguished, and both supposed that it still existed. The court stated that there was no mistake as to the legal effect of the deed, for it would have conveyed the appurtenant way if it existed, but held "there was superadded to the mistake of fact ignorance of a principle of law which, if known and contemplated, would have prevented the mistake under which the parties acted," and relief was granted.

The New Jersey court held, in Swedesboro v. Gans, 65 N. J. Eq. 132, 55 Atl. 82, that where, on the death of a mortgagor, the mortgagee secured a release of the widow's right of dower, and also a deed to the premises from the mortgagor's father, under the belief that the property descended to the latter, and canceled the mortgage, the complainant, as against the heirs of the mortgagor, was entitled to a decree for the re-establishment and foreclosure of the mortgage. After referring to authorities, both English and American, the court say: "The ability of courts of equity to rectify mistakes arising from ignorance of the law is everywhere acknowledged to exist in certain instances. The propriety of exercising this power must depend upon the circumstances which surround each case. It will depend upon whether a party who asks relief has been negligent, whether he has been led into his belief by the other party, whether other innocent parties will be injured by a rectification of the mistake, or whether the mistake can be regarded as one of fact, although indirectly resulting from a mistaken notion of the law. All these and other features are to be considered in deciding whether it is equitable and politic to put the mistaken party in statu quo. * * * The mistake was in respect to the ownership of the property upon which the canceled mortgage was an incumbrance, and the English cases treat such a mistake as one of fact."

A review of some of the authorities will be found in a note to

Alabama v. Jones (73 Miss. 110), 55 Am. St. 488, 494, and also the note to Marriot v. Hampton, 2 Smith's Leading Cases, 421. In 2 Pomeroy, Eq. Jur. 1484, § 842, et seq., the author refers to some of the English cases above noted.

We are of opinion that in a case of this kind, where a person enters into a contract for the purchase of property with the understanding that it belongs to another, when in fact it belongs to himself, that he is entitled to relief, unless the circumstances are such that it would be inequitable to restore the title. In this case respondent was an ignorant person, and, while he may have consulted an attorney in a general way, the time given him to either purchase or remove from the land was so short that it cannot be said he fully considered and understood the effect of his act. We are aware of the case of Erkens v. Nicolin, 39 Minn. 461, 40 N. W. 567, wherein it was said: "Money paid under mistake of law cannot be recovered back, where the transaction is unaffected by any fraud, trust, confidence, or the like, [and] both parties * * * knew all the facts [and] had equal means of knowing them." The facts were different and the case is distinguishable.

Affirmed.

BROWN, J.

I concur in the result, but prefer to place the decision upon the ground, which appears without serious controversy, that the parties entered into the transaction under a mutual mistake as to their legal rights. Both knew the facts, but understood and believed that the decision of the United States land department was a final and conclusive determination of their respective claims to the land. In this they were both mistaken—a mutual mistake of law, from which equity will relieve either.