GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN, v. EDWARD P. TOWNE.[1]

February 16, 1917.

Nos. 20,054—(194).

**Recovery of money paid under mutual mistake of fact — forged mortgages.**

D. procured from defendant the sum of $2,500 as a loan to A., ostensibly secured by her note and a mortgage on real property owned by her. The note and mortgage were forgeries. Before the maturity of this mortgage, D. induced plaintiff to make a loan of $5,000 on the same property, arranging with defendant to accept payment of the $2,500 mortgage. Plaintiff, on receiving a note and mortgage purporting to be executed and acknowledged by A., but in fact forgeries perpetrated by D., delivered to defendant its check for $2,500, in payment of his mortgage, and to D. its check for $2,500, payable to A. Both plaintiff and defendant were ignorant of the forgeries, and neither was negligent. In this action to recover of defendant the money paid to him by plaintiff, it is *held*:

(1) The money paid to and received by defendant in payment of the forged note and mortgage held by him was the money of plaintiff, and paid by it. It was paid under a mutual mistake of fact and without

[1]Reported in 161 N. W. 403.

consideration, and may be recovered back unless defendant, in reliance upon the payment, has altered his position so that to compel repayment would be against conscience.

(2) In an action to recover for money had and received under a mutual mistake, defendant is not liable where he has irrevocably altered his position to his loss in reliance upon the payment. The evidence in this case does not show that defendant, by reason of or in reliance on the payment, lost an opportunity to recover from the party guilty of the fraud, or that his position has been altered to his damage.

Action in the district court for St. Louis county to recover $2,500 paid to defendant. The answer, among other matters, alleged that in accepting that sum defendant fully believed that the same was paid him at the request of Emma M. Anschutz acting through her agent, C. J. O'Donnell, and defendant received the sum so paid in good faith and fully believed that the note and mortgage so satisfied were valid and genuine instruments, and defendant used all reasonable care and prudence in the transaction. The facts are stated at the beginning of the opinion. The case was tried by Fesler, J., who made findings and dismissed the action. Plaintiff's motion to amend the conclusions of law was denied. From the judgment entered pursuant to the order for judgment and from the order denying its motion for amended conclusions of law, plaintiff appealed. Reversed.

*William B. Anderson, Warner E. Whipple* and *Frank E. Randall,* for appellant.

*W. S. Telford* and *William P. Harrison,* for respondent.

BUNN, J.

The question in this case is which of two innocent parties, plaintiff or defendant, shall suffer for a wrong committed by a third person. The trial court decided in favor of defendant and plaintiff appeals from the judgment.

The facts are as follows: Plaintiff, a fraternal insurance corporation authorized and accustomed to loan its surplus funds on real estate security, in June, 1911, received a written application from the Hartman-O'Donnell Agency of Duluth, ostensibly on behalf of Emma M. Anschutz, for a loan of $5,000 for five years, secured on certain improved

real estate in Duluth owned by Mrs. Anschutz. After the property had been inspected and the title examined the application was accepted. The examination of the title by plaintiff's counsel in Duluth disclosed a prior mortgage on the property for $2,500, running to and held by the defendant. This mortgage was not due, but O'Donnell, acting for the agency, assured plaintiff orally and in writing that defendant would accept payment of his mortgage, and that he had so arranged with defendant. The Duluth counsel for plaintiff interviewed defendant, and confirmed his willingness to accept payment. Plaintiff, after receiving from the agency a mortgage, note and coupon notes purporting to have been executed by Mrs. Anschutz, and the mortgage to have been acknowledged by her before O'Donnell as notary, drew two checks for $2,500 each, one payable to defendant, the other to Emma M. Anschutz. These checks were mailed to plaintiff's counsel in Duluth for delivery upon procuring a satisfaction of defendant's mortgage. This satisfaction was delivered to the counsel a few days later and duly recorded. The check payable to defendant was delivered to him and the proceeds are retained by him. The check payable to Mrs. Anschutz was delivered to the Hartman-O'Donnell Agency. O'Donnell forged the payee's name, secured payment of the check and converted the proceeds.

Both the mortgage to defendant and that to plaintiff were forgeries, as were the notes. This was the work of O'Donnell. Mrs. Anschutz had made no mortgages on her property, and did not know of their existence until some two years after that to plaintiff was placed on record, at about which time O'Donnell absconded for parts unknown. O'Donnell paid the interest coupons on both mortgages as they became due, and neither plaintiff nor defendant had any knowledge or suspicion that the mortgages and notes held by them were not genuine until Mrs. Anschutz' discovery of the forgeries and repudiation of the mortgages was reported to them. When this information reached plaintiff, its general counsel went to Duluth, acquainted defendant with the facts showing the invalidity of the mortgages, and demanded the return of the $2,500 paid by plaintiff to defendant supposedly in payment of this mortgage. This demand, as well as a later written demand, was refused by defendant. This action brought to recover the $2,500, was commenced December 11, 1914.

The theory of plaintiff, and the basis of its claim of a right to recover

in this action, is that the money was paid by it to defendant as the result of a mutual mistake of fact, both parties believing and acting on the belief that defendant had a valid mortgage on the property, whereas in fact he had none. This theory assumes that the money paid to defendant was plaintiff's money, as the action is really one for money had and received, the claim being that defendant has received the money of plaintiff, has no right to it, and ought in equity and good conscience to turn it over.

Defendant insists that the action cannot be maintained because it was not plaintiff's money that defendant received, but the money of O'Donnell, paid by plaintiff as his agent in the exercise of a right claimed by him through an agreement with defendant. It contends further that a recovery should be denied because plaintiff is unable to restore the *status quo* of defendant, that is, put him in the position he was before the payment was made.

The questions are very interesting. The trial court was with defendant on both his contentions as stated above. As we stated in the beginning, both plaintiff and defendant are absolutely innocent. Neither was in any way negligent. One of them must suffer a loss from O'Donnell's dishonesty.

1. As stated by the trial court, the first question is: Whose money did Towne get? If it was not plaintiff's money, this action will not lie. The learned trial judge held that the money was not plaintiff's. He reached the conclusion on this reasoning: Towne's mortgage was not due; he was induced to accept payment by O'Donnell; the payment by plaintiff was on the direction of O'Donnell, and supposedly on behalf of the mortgagor; plaintiff's note and mortgage had been delivered to it, and all that was left to be done was to pay the $5,000, and get the Towne satisfaction. The court concluded from these facts that O'Donnell, and not plaintiff, was the payor of the money to Towne. It did not say that it was O'Donnell's money, or Mrs. Anschutz's money, and it could not be so said, as neither had any right whatever to it. It seems to us that the money represented by the check or warrant delivered by plaintiff's Duluth attorney to defendant was plaintiff's money, and that plaintiff paid it to defendant. It was induced to part with it by the fraud of O'Donnell, but we fail to see how the right or title to the money ever passed from

plaintiff. Nor do we see the logic of saying that O'Donnell, not plaintiff, was the payor. Were we dealing with the payment of a genuine mortgage, it would be right enough to say that the payment, in legal contemplation, was by the mortgagor. But here we have the payment of a mortgage that never existed, which strikes us as nothing more or less than a payment made by plaintiff to a third person on the strength of false representations of O'Donnell that such person was entitled to it. The situation is not as if plaintiff had intrusted O'Donnell with the money, and authorized him to pay Towne. This it expressly declined to· do. We do not intimate that this would have given O'Donnell any right to the money, or that it would have ceased to belong to plaintiff, or that plaintiff would not still have been the payor, acting through an agent. We have tried unsuccessfully to appreciate the force of the argument that, because defendant agreed with O'Donnell to accept payment of the mortgage before it was due, and because plaintiff paid the money to defendant under this agreement, it follows that the money was not plaintiff's or was not paid by it. The facts that the money was plaintiff's and that plaintiff paid it to defendant are none the less the facts because O'Donnell had arranged with defendant to accept payment, or because without such an arrangement defendant could not have been compelled to accept payment. If we are right in this conclusion, it can hardly be questioned that the case is within the doctrine of liability for money had and received; that is, defendant received and retains without right money that belongs to plaintiff. It remains to see what the courts have held as to the applicability of the rule imposing liability for money had and received to facts like those in this case. As to the rule itself, it has been stated clearly in many cases in this state, and applied to various situations. Probably there is no better statement of the rule than that of Mr. Justice Mitchell in Brand v. Williams, 29 Minn. 238, 13 N. W. 42, where that great jurist said:

"An action for money had and received can be maintained whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over. This proposition is elementary. There need be no privity between the parties, or any promise to pay, other than that which results or is implied from one man's having another's money, which he has no right conscientiously

to retain. In such case the equitable principle upon which the action is founded implies the contract and the promise. When the fact is proved that he has the money, if he cannot show a legal or equitable ground for retaining it, the law creates the privity and the promise."

As expressed by Justice Mitchell in Sibley v. County of Pine, 31 Minn. 201, 17 N. W. 337, there is a "moral obligation, resting upon every person, natural or artificial, to make restitution where they have received without consideration the money of another which they have no right to retain." Other cases which have announced and applied the rule are Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91; Valentine v. City of St. Paul, 34 Minn. 446, 26 N. W. 457; Libby v. Johnson, 37 Minn. 220, 33 N. W. 783; Landin v. Moorhead Nat. Bank, 74 Minn. 222, 77 N. W. 35; Milton v. Johnson, 79 Minn. 170, 81 N. W. 842, 47 L.R.A. 529; Merriam v. Johnson, 86 Minn. 61, 90 N. W. 116; Quigley v. Welter, 95 Minn. 383, 104 N. W. 236; Stoakes v. Larson, 108 Minn. 234, 121 N. W. 1112; Todd v. Bettingen, 108 Minn. 493, 124 N. W. 443, in which Lord Mansfield's theory of the action, quoted from Moses v. Macferlan, 2 Burr. 1005, is approved. The entire quotation is pertinent here, but we will repeat only these words: "It (the action) lies for money paid by mistake, or upon a consideration which happens to fail."

Other decisions of this court having a bearing upon the question are: Houston v. Northern P. Ry. Co. 109 Minn. 273, 123 N. W. 922, 18 Ann. Cas. 325; Vetter v. Sandbo, 114 Minn. 144, 130 N. W. 450; Aetna Life Ins. Co. v. Flour City O. I. Works, 120 Minn. 463, 139 N. W. 955; Heywood v. Northern Assurance Co. of Detroit, 133 Minn. 360, 158 N. W. 632.

While no case in this state is just like this in its facts, and it would be surprising if this were not so, the principles are clearly stated and firmly settled, and we think are applicable to the facts here. Defendant, through mistake, obtained possession of plaintiff's money. There was both a plain mutual mistake, and a want or failure of consideration. It is entirely immaterial that defendant honestly believed he was entitled to the money, or that he was guilty of no fraud or duress in obtaining possession of it. In several of the Minnesota cases cited, defendant's possession of the money of plaintiff was just as innocent as it is here. The

test is whether defendant has a right to retain the money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience to pay it over. We are unable to escape the conclusion that this case comes within the rule. It will probably be conceded that it does if it is right to say that the money paid to defendant was plaintiff's money. We have sufficiently discussed this point and expressed our view that the money was plaintiff's and that plaintiff paid it to defendant. Defendant has no right to the money as against plaintiff, and his retention of it is against conscience unless by the payment defendant's position has been irrevocably changed to his loss.

It is unnecessary to cite or analyze the multitude of cases from other jurisdictions that announce the rule and apply it to particular facts. There are two cases that defendant relies on to support his contention that plaintiff should not recover because O'Donnnell, rather than plaintiff, should be considered as having paid the money to defendant. These cases are Walker v. Conant, 69 Mich. 321, 37 N. W. 292, 13 Am. St. 391, and Russell v. Richard, 6 Ala. App. 73, 60 South. 411; Ex parte Richard, 180 Ala. 580.

In the Michigan case the facts are much like those here. Edgar Van Riper, son of Henry Van Riper, forged the signatures of his father and mother to a mortgage for $1,000 on land of the father. The mortgagee, the defendant in the case, supposed the signatures to be genuine. While this mortgage was on record, and before it became due, Edgar forged the signatures of his father and mother to a mortgage for $3,000 on the same property. Plaintiff agreed to loan the money if defendant would release the first mortgage, plaintiff to pay the same out of the $3,000 to be loaned by him. Defendant agreed, and after receiving from Edgar the mortgage and notes apparently signed by Henry Van Riper and wife, and from defendant the satisfaction of the first mortgage, drew his check for the amount due on the first mortgage and, as defendant had requested, deposited this to his credit in a Detroit bank, paying the balance of the $3,000 to Edgar in cash. Edgar had told plaintiff to pay defendant's mortgage out of the $3,000. After it was discovered that both mortgages were forgeries, plaintiff brought the action to recover from defendant

the sum so paid him. It was held by the majority of the court that plaintiff could not recover. The reasoning is that of the trial court in the case at bar; that is, the payment was made by plaintiff for Edgar, and at his request; it was in legal effect a payment by Edgar, and not by plaintiff. The case is surprisingly like this, but we cannot follow it. The dissenting opinion of the Chief Justice appeals to us as correct.

The facts in Russell v. Richard, supra, were as follows: Jim Gardner, a swindler, represented himself to be Taylor Parkman, the owner of a lot, and obtained from defendant a loan of $500 upon a forged note and mortgage. Shortly after the loan matured, Gardner, again impersonating Parkman, applied to plaintiffs for a loan of $850 on the lot. Plaintiffs, satisfied with the security, and believing that they were dealing with Parkman, agreed to make the loan. They gave to the swindler's attorney their check for $850, with instructions to pay off defendant's mortgage. The attorney cashed the check, paid $500 to defendant and received a satisfaction of the mortgage. Neither plaintiffs, defendant, nor the attorney had any knowledge that the mortgages were not genuine. Defendant did not know that the money he accepted in payment of his mortgage came from plaintiffs. The court said that if the money received by defendant was furnished by and paid in behalf of plaintiffs, and was, in legal contemplation and effect, the payment of plaintiffs, made under an honest mistake of a material fact, the right to recover would be undoubted. But the court held that the money paid was that of the swindler, and was paid by him through his attorney. The Michigan case was cited as authority, though the court did not desire to be understood as approving that decision. The facts that plaintiff paid the money to the swindler, and that the latter, acting through his attorney, paid it to defendant, perhaps justified the decision that it was the swindler's money, and distinguishes the case from the one at bar, from the Michigan case, and from Strauss v. Hensey (D. C.) 9 App. Cas. 541. It also explains the disapproval by the court of the Michigan case, and the failure of the supreme court of Alabama to reverse the case when there on *certiorari*.

The case of Strauss v. Hensey, distinguished in the Alabama case, holds defendant liable as for money had and received under the following circumstances: Henderson, an impostor, impersonating an owner

of property, obtained money from defendant on fraudulent notes and deeds of trust as security. He practiced the same scheme upon plaintiff for a larger amount. In order to clear the property from defendant's supposed deeds of trust, plaintiff took up the notes, paying defendant the money. Both acted in entire ignorance of the fraud of Henderson. The contention was made, as here, that in taking up the notes and paying the money to defendant, plaintiff was acting as the agent of the impostor, and hence the action for money had and received would not lie. The court said that the money was plaintiff's money, that he paid it to defendant without consideration under the false and mistaken supposition of both parties that the deeds of trust were genuine. It was held that the case fell clearly within the principle that where money is paid by mistake, neither party being at fault, the party paying the money may recover it back again as money paid without consideration, and therefore had and received by defendant to the use of the plaintiff.

We will not prolong the discussion of this question, or refer to further authorities. We hold that the money paid to defendant was plaintiff's money, paid by it and received by defendant under a mutual mistake of a material fact, and without consideration, and that plaintiff may recover it back unless a recovery should be denied on grounds to be next considered.

2. Defendant contends that equity and good conscience do not require the repayment of the money to plaintiff because defendant cannot be restored substantially to his *status quo*. The argument is that, by the payment of his note and mortgage on July 1, 1911, he was, through no fault of his own, deprived of the opportunity to collect of O'Donnell on March 18, 1912, when the note fell due. As we understand it, defendant does not claim laches. Counsel for plaintiff argue the question of laches in their brief, but counsel for defendant point out that there was no finding of laches by the trial court, and insist that the question is not one of laches, but solely whether the failure of plaintiff to restore defendant to his status, whether chargeable to plaintiff or not, bars the right to recover. It is manifest that plaintiff was not to blame; it was quite impossible for plaintiff to restore defendant to his status to any greater extent than it did. Therefore defendant must contend, as he does, that restoration to *status quo* is a *sine qua non* to recovery in all cases where

money paid under a mutual mistake of fact is sought to be recovered. It is true the liability for money had and received rests upon equitable principles, and, generally speaking, that a recovery will be allowed only when it has been received under such circumstances that, in equity and good conscience, the defendant ought not to retain it. Defendant relies greatly upon what is said by Professor Keener in his work on Quasi Contracts, page 59, et seq., and the cases cited. In treating the question whether it is against conscience for a defendant to retain money paid to him under mistake when the circumstances are such that the parties can no longer be put in *statu quo,* and the repayment will throw a loss upon him, the author states that the question may arise where: (1) But for the negligence of plaintiff, the mistake would not have been made; (2) where the mistake was due to the negligence of defendant; (3) where neither the plaintiff nor the defendant can be said to have been negligent; (4) where if the plaintiff was negligent the defendant was equally negligent; (5) where, though there was no negligence at the time of payment, the plaintiff has been guilty of laches in asserting his rights. The present case clearly comes under the third situation; that is, where neither party can be said to have been negligent. Professor Keener quotes from early English cases holding that, if the mistake was one for which the defendant was no more responsible than plaintiff, there could be no recovery, but says that in England today (1893) the law is the other way. He also points out that the law in New York is that the money may be recovered back though defendant cannot be put in *statu quo.* Kingston Bank v. Eltinge, 40 N. Y. 391, 100 Am. Dec. 516; Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74, 43 Am. Rep. 655. These cases are criticised by Professor Keener, and also by Professor Woodward in his work on Quasi-Contracts, § 25, who says:

"Where it appears that neither party was negligent, or that they were equally negligent, restitution has in a few cases been enforced; but there is reason to hope that these cases will not be followed, and they are already at least equalled in number by the cases which deny relief."

We are disposed to agree that an irrevocable change of position by defendant, so that a recovery will result in a loss to him, that is, put him in a worse position than he would have occupied had the money never been paid him, is a good defense to a recovery where neither party was

negligent, or one not more so than the other. Where, for example, defendant before discovery of the mistake has paid the money over to those who, as far as he is concerned, are entitled to it, he cannot be compelled to refund, at least where for some reason he cannot obtain reimbursement from those to whom he has paid the money. Woodward, Quasi-Contracts, § 27, and cases cited. 2 Page, Contracts, § 826. And we think it is also sound law that defendant is not liable where he has irrevocably altered his position in reliance on the payment. But plainly the change of position must be caused by the payment, and must be a material and irrevocable change. In the case at bar we are unable to see that defendant, by receiving payment of his mortgage from plaintiff, and giving up the evidences of the supposed debt of Mrs. Ansch lost anything of value. The precise claim in this regard is that had the payment not been made, defendant, when the mortgage became due, would have discovered that the mortgage was a forgery, and would have received payment from O'Donnell, who had not yet absconded, but was still doing business in Duluth. This claim is too uncertain and speculative. The evidence as to the dealings of O'Donnell warrant no inference that he would have paid the mortgage, but on the contrary convince us that he would either have forged a new mortgage in renewal of the old, or, if he feared discovery of his crimes, would have left the country, as he did do later. He was not in the business of paying his debts, but of obtaining money through forgery and fraud, and it is not shown that he could have been forced to pay. We conclude that the only reasonable inference is that had plaintiff not paid defendant, he would be today the holder of a forged note and mortgage, but of nothing else in the way of satisfaction for the money O'Donnell procured of him through fraud. That the possession of this evidence of O'Donnell's crime would be of no value to defendant seems very clear.

The judgment appealed from is reversed, with directions to amend the conclusions of law in accordance with the views herein expressed, and to enter judgment in favor of plaintiff, with interest from the date the action was commenced.