## J. E. NELSON AND S. E. NELSON, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF J. E. NELSON & BROS AND ANOTHER v. W. H. ROHWEDER.[1]

December 10, 1920.

No. 21,995.

**Money had and received—verdict for plaintiffs directed.**

Plaintiffs deposited money with defendant to apply on the price of tractors under a contract they proposed to make with him. The parties having failed to enter into the contract, plaintiffs were entitled to the return of the money and the court was justified in directing a verdict in their favor.

Action transferred to the district court for Pipestone county to recover a deposit of $750 upon a proposed contract. The facts are stated in the opinion. The case was tried before Nelson, J., who at the close of the testimony granted plaintiffs' motion to dismiss the counterclaim and for a judgment on the pleadings for the amount demanded. The jury returned a verdict as instructed by the court. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Morris Evans* and *C. T. Howard,* for appellant.

*A. C. Severson,* for respondents.

LEES, C.

This case grows out of a transaction had in April, 1919. At that time plaintiffs were dealing in agricultural implements at Canby. Defendant had an agent named Harding, who, on April 9, procured plaintiffs' signature to two written instruments prepared on blank duplicate forms furnished by defendant for use in drawing up contracts for the sale of tractors. They contained the following clause:

"This proposal shall not become operative or take effect until it has been approved and accepted by the W. H. Rohweder Company at its

[1]Reported in 180 N. W. 223.

Home Office in Pipestone, Minnesota; and upon acceptance there it shall thereupon become and be a Minnesota contract and a duplicate or copy thereof shall be forwarded to the dealer by mail."

They provided for a cash deposit of $750, to be returned if defendant did not accept the proposed contract. The deposit was made and the contracts mailed to defendant. On receipt thereof he inserted these words in both forms:

"A discount, not to exceed 20 per cent, will be allowed on Senior models." There was a clause in the contracts relating to the delivery of the tractors. It was in the following form when they were mailed to defendant:

| Model | Jan. | Feb. | Mch. | April | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. | Total |
|-------|------|------|------|-------|-----|------|------|------|-------|------|------|------|-------|
| Juniors | | | | | 1 | | Two | Oar | Loads | | | | 8 |

Defendant indorsed his acceptance on the original and retained it. He prepared and signed what purports to be a copy of the original, but it differs from it in that the delivery clause appears therein as follows:

| Model | Jan. | Feb. | Mch. | April | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. | Total |
|-------|------|------|------|-------|-----|------|------|------|-------|------|------|------|-------|
| Juniors | | | | | 1st | | (Two | Oar | Loads) | | | | 8 |

He mailed this copy to plaintiffs with the duplicate they had made, but did not sign the latter. He then shipped two carloads of tractors to plaintiffs and drew on them for the purchase price. They immediately notified him that they had not ordered the tractors shipped and would not accept them. When they reached Canby they refused to receive them. There were some negotiations for a settlement with no results. According to defendant's testimony, plaintiffs gave as their reason for not accepting the tractors that they had received a large shipment of Republic tractors and could not handle more because the banks would not take their paper on account of a Liberty Loan drive which was then going on. Plaintiffs had previously purchased a tractor from defendant for use as a demonstrator at Canby and another for like use at Madison. For these two tractors they gave their notes. Before

the contracts were drawn defendant had sent Harding to Canby to assist plaintiffs in selling tractors. He remained until after plaintiffs refused to receive the shipment.

Plaintiffs brought this action to recover the deposit of $750. In his answer, defendant set up as a counterclaim the alleged contract, plaintiffs' breach of it, and the damages resulting therefrom. At the close of the evidence the court directed a verdict in plaintiffs' favor. Defendant moved for a new trial and appeals from the denial of his motion.

1. The motion for a directed verdict was made and granted on the ground that there was no contract between the parties, and hence defendant was not entitled to retain the deposit or to damages for the alleged breach of contract. The sole question, therefore, is whether a contract was made, for, if there was none, defendant has had and received money of the plaintiffs which he is bound to refund by the terms of the proposal which accompanied the deposit and because, in equity and good conscience, the money belongs to them. Sibley v. County of Pine, 31 Minn. 201, 17 N. W. 337; Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443; Grand Lodge A. O. U. W. v. Towne, 136 Minn. 72, 161 N. W. 403, L.R.A. 1917E, 344; Seastrand v. D. A. Foley & Co. 144 Minn. 239, 175 N. W. 117.

When the instruments signed by plaintiffs left their hands, they amounted to nothing more than a proposal to enter into a contract with defendant upon the terms set forth therein. They proposed to purchase Junior and Senior models at stated prices, subject to a graduated scale of discounts on both models ranging from 15 per cent up to 25 per cent according to the number of tractors purchased. If defendant accepted the proposal, plaintiffs were to be notified by the return to them of the duplicate contract bearing his signature. Defendant was not satisfied with the terms of the proposed contract, for he added a new term covering the discount on the Senior models. He contends that this change was not material because one of the plaintiffs testified that they did not purchase any Senior models, and hence did not regard the change as important. But he also testified that they did not accept the contract as changed. Defendant testified that the carbon copy of the contract was blurred and so he prepared another, putting in the changes, and mailed

it to plaintiffs with a letter stating that if it was not satisfactory they should let him know and he would make it satisfactory, and that they did not reply; that in the course of a subsequent conversation one of them said that they expected to sell a number of Senior models and wanted a better discount on them than he had provided for, and that rather than have any trouble he offered to give the same discount as on the Juniors. This indicates that both parties regarded the change in the discount clause as material, and that plaintiffs never assented to it.

We regard the change in the delivery clause as of even greater importance. According to the contract plaintiffs received from defendant, he would clearly have the right to compel them to take and pay for two carloads of 'tractors on May 1. They construe their proposal to mean that they would take only one tractor in May and would not take two carloads until July, and insist that the change from "I" to "1st" under the heading "May" in the delivery clause was a radical alteration of the contract they proposed to enter into. The change now under consideration was not made in the original contract which defendant signed and kept. He urges that this became and is a binding contract irrespective of the copies or duplicates. But he sent to plaintiffs a contract expressly providing for the delivery of two carloads of tractors on May 1. They did not accept it, but treated it as a tender of a new contract in place of the one they had offered to make. The duplicate they had prepared was returned without defendant's signature. This was in effect notice to them that their proposal was rejected and that defendant was making a counter proposal. The case comes to this: Plaintiffs proposed to make a contract with which defendant was not satisfied. He made a counter proposal for a contract with which they were not satisfied, and there the matter ended. In this respect the case is ruled by Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L.R.A. 1915D, 150.

We find nothing indicating that plaintiffs, by their conduct, assented to the proposed change in the contract. The purchase of the two tractors for demonstrating purposes appears to have been a disconnected transaction. Plaintiffs' acceptance of Harding's aid in attempting to sell tractors in their territory did not amount to an acceptance of the

contract proposed by defendant. Harding's services began before any contracts were drawn up by either party and cannot be referred to them. The deposit was not made to apply on the sale of the demonstrators, which was a separate transaction.

Our conclusion is that the parties never came to terms in their attempt to agree upon a contract, and hence there was nothing to submit to the jury.

The order appealed from is, therefore, affirmed.